Judge Underwood
delivered the opinion of the Court.
These are cases relating to a partner1’ ship formed for the purpose of conducting a grocery and commission business, in the town (now city) of Louisville. At its formation the partners had great confidence in the honesty of each other, Colmesnil being the husband of Honore’s daughter. At the period of filing the original bill, confidence had been supplanted by suspicion and mutual jealousy, and in the progress of the cause, a spirit of crimination and recrimination, whether well founded or not, is manifested, rarely equalled and perhaps never surpassed. Frauds of the blackest die in relation to the accounts of Colmesnil individually, and to the manner in which Colmesnil kept the accounts of the firm, are attributed to him by Rouore, and in return Colmesnil charges Honoré with bringing forward claims, and swearing to them, destitute of truth and justice. Unfortunately, the parties scarcely agree in any one important fact, and what is yet more unfortunate, their transactions are so enveloped in darkness, that it is nearly impossible for the court to elucidate them and to administer justice.
It is clear from the bills and answers, that in April, 1817, the parties entered into partnership under the style of John A. Honoré and Colmesnil, for the purpose of doing business as grocery and commission merchants in Louisville, for an indefinite period. The terms of the partnership were not reduced to writing, and in relation to these the partners do not agree in any one point. Honoré contends, it was mutually agreed that each partner was to contribute to the firm the whole of his monied capital, that profit and loss' were to be apportioned according to the capital advanced, and that he was to have a reasonable rent for his store and warehouse, in which the business pf the firm was to be transacted. Colmesnil states the terms *507 of the partnership to be, that each partner was to contribute the same sum for the purpose of forming a capital, and that no specific sum was ever agreed on, that the profit and loss of the concern were to be equally shared and born, and that no rent was to be paid for the use of the store and warehouse, because the superior services of Colmesnil were estimated to be equivalent to the value of their rent. No deposition of any witness is filed, proving the terms of partnership, and in the absence of such proof, we are left to apply the rules of law, without any clear and satisfactory evidence which would enable us to determine whether the terms of the partnership have been • truly stated, either by the complainant or defendant.
Had there been a written contract providing for the existence of the partnership, and defining the rights of the partners respectively, no difficulty could have arisen. In the absence of such a contract, and in the absence of all proof showing an express agreement by parol, “the partnership as regards its regulation, is governed by the contract implied by law, from the relation of the parties. Without an express agreement, the concurrent opinion of all the writers on the civil law, is, that the loss must be equally borne, and the profits must be equally divided.” See Gow on partnership, 10. The same author proceeds to state a case in which Lord Ellenborough directed an issue to ascertain the interest of a son, whose father told him on his coming of age, he should have a share in the father’s business; the son having acted as a partner between five and six years, leaving it to the jury to say, under the particular circumstances of the case, what was a fair proportion, and the jury only gave one fourth part of the profits. But Lord Eldon was dissatisfied with the result of this issue, alleging that, “as no distinct proportion was ascertained by force of any express contract between the parties, they must, of necessity, have been equal partners, if partners in any thing.” There is nothing in this cause to induce a belief that a gratuity was intended, and we perceive no principle upon which to restrict either partner from claiming half the profits. But before these profits are divided, the capital of each partner and the debts and expenses of the firm must be deducted.
amendments to be filed in chancery;& unless that discretion be party complaining, its exercise will not be disturbed. in admitting abused^to the injury of the
? ^iiUedTo adjust the accountB of the parties.
Before we enter into the consideration of the aecounls> there are several questions of law made in the progress of the cause, in the circuit court, which will disposed of. Some of them are so intimately con-with the accounts, that they will be embraced in the consideration of the accounts. And,
1st. The complainant Honoré filed his original bill February, 1820, praying for a dissolution of the partnership,and a settlement of its affairs. On the 23d February. 1820, a decree was rendered by consent, dissolving the partnership and appointing a commissioner divide the goods and wares belonging to the firm, between the partners. In May, 1820, the complainant filed an amendment to hisbill; in August, 1821, he filed another, and in April, 1823, he filed another; to the filing of which last the defendant excepted. We are opinion that the court correctly overruled the exceptions of the defendant. Filing amendments depend on the discretion of the court, and unless that discretion has been abused to the injury of the party complaining, this court will not control it. The matter brought forward in the amendment excepted to, is important, some of it had not been before exhibited, the complainant swore he had obtained part of it since his last preceeding amendment; the procrastination likely to result, was calculated to damage the complainant as much, if not more than the defendant, and in the settlement of extensive mercantile transactions, the business of years, it is not to be presumed that the parties can immediately lay their fingers on all important papers which may elucidate complicated accounts, and bitter controversies which grow out of them. Under these considerations, we cannot say that the court erred in permitting the amendment of April, 1823, to be filed.
2d. On the 26th of February, 1820, the court apP°'in*ed commissioners “to examine and state the accounts, claims and demands of complainant and defendant, in relation to the copartnership and individually, an(j report.” By the order appointing commissioners, the parties respectively were to have access to the books and papers of the firm, either party was to be allowed to make explanations in regard to them, and to adduce evidence, written and oral, before the commissioners. The parties were directed to produce, *509 on oath, all books and papers relating to the firm, and to lay them before the commissioners for inspection. The commissioners were authorized to examine the parties on oath, and to administer oaths to
Accounts between the nership.
Partnership transaction* repor e ’
On the 20th of May, 1820, the commissioners made their report to court, in which they state, among other things, that they had, after hearing witnesses, gone into an investigation of the accounts between Honoré and Colmesnil, previous to the copartnership, and they proceed to state how those accounts stand in the ledger or book of Honoré; and they say, from the books and papers exhibited, relating thereto, they cannot discover any material error. They proceed to state what appears on the book, to-wit: the execution of a note by Honoré to Colmesnel, for $2252, payable 1st of June 1816, and the giving of a check by Honoré in favor of Colmesnil, for $557 55, which was paid, they say, as per Honore’s bank book, on the 18th December, 1815, and which, with the said note, balanced the account. They next speak of an account commencing November 14, 1815, entered in Honore’s ledger, exhibiting a balance in favor of Colmesnil, for $283 49, which sum, with the amount of the note and interest, are brought into an account exhibited by Colmesnil against Honoré, upon the settlement of which, on the 12th April, 1817, a balance is left in favor of Colmesnil, amounting to $1287 55, which, with interest up to the 26th January, 1820, making an aggregate of $1491 35, is credited to Colmesnil, and debited to Honoré, on the books of the firm.
The commissioners then notice the firm transactions and say, that they have no means of ascertaining the stock of the parties, except from a stock memorandum book produced by Colmesnil and denied by Honoré, from which it appears that Honoré contributed, as stock, $6876 88, and Colmesnil $5037 '59. They report a balance in favor of the firm, of $26,386 15; their examinations extending down to the 26th of January, 1820. From the condition of the books and in consequence of' there being no stock, merchandize and other proper accounts opened and continued in the ledger of the firm, the commissioners say it is impossible to render a correct mercantile report. They present severa] accounts as the result of their labors.
Exceptions to comm’rs. report and cause heard,
No rule of law which precludes the court from hem-ins; exceptions to the report of commissioner, or master in chancery, at any time, or of correct-ins: or rejecting the report in whole or in part, even upon final hearing.
In March, 1824, the complainant, with leave of the court, filed various exceptions to the report of the commissioners; and upon filing his exceptions, the cause came on for final hearing, and was heard at the same term, during which the exceptions were- filed, but no decree was rendered until the ensuing term, when the court quashed a part of the report and affirmed the balance, with an addition for store and warehouse rent, omitted by the commissioners. The defendant, Colmesnil objected to the complainant’s'filing exceptions to the report of the commissioners, and being overruled, filed an exception to the opinion of the court. The ground of objection relied on by Colmesnil, is, that the exceptions came too late, and that in case they should be sustained, be would suffer irreparable injury from the death of one clerk and removal of another, who had testified before the commissioners.
We are not apprised of any law which puts the re-, port of commissioners beyond the revision of the court, at any time, when good reasons can be offered for calling it in question. We would not permit a report to be set aside, in part or whole, so as to prejudice the rights of litigants. Cases may happen, where a party relies entirely for success or defence on the matters reported, and would be surprised and subjected to entire loss, if he were not permitted, after seting aside a report, to strengthen his cause by taking depositions or by obtaining another reference to commissioners. In such cases, it would be the duty of the court,on the application of the party, to afford him an opportunity to take and present his .proqf and points relied on. But we cannot conceive a case where either parly, as matter of right, can force the court to recognize an erroneous.report, when there exists in the cause, evidence by which it can be corrected. As a matter of practice, we concede that circuit courts may establish rules, within which, parties, shall be bound to except to reports; and if exceptions are not filed within the prescribed time, they maybe rejectedif offered thereafter. Even in that case, we are of opinion, that the court is not bound to consider the report as conclusive, but may disregard it, partly or entirely, if there be evidence showing that it is erroneous.
Death of witnesses, whereby their testimony would be lost, no reason against setting aside an incorrect re» port of commissioner. The party should have taken their depositions.
*511 íhe permanent master in chancery, known íó the English courts, is unknown here. We, under an act of Virginia, (1 Dig. L. K. 226) have substituted in his place, a commissioner or auditor,pro hacvice. The object of the law, in providing for the appointment of the commissioner, is to save the time of the court, and it is his duty when appointed, todo those things, and those only, which are required of him by the order of court, and if he transcends the authority given him by the court, his acts are nugatory. This doctrine is recognized in the case of Saunders vs. Saunders’s Executors. Littell’s Select Cases, 10. The power conferred on our commissioners, usually exceeds that which the English master in chancery, by the rules of practice possessed; see Farmer and Arnold vs. Samuel, &c. 4 Litts. Reports, 190; Remsen vs. Remsen, 2 John. Chan. Rep. 495. Whether our courts can go so far, as to confer judicial power on a commissioner, has not been decided, and need not now to be made a question. In Bolware vs. Bolware and Weisiger, 4 Litt. Rep. 258, this court decided, that it was unnecessary to file exceptions where the report on its face is vague and uncertain. The case of Adams, Sec., vs. Essex, &c., 1 Bibb, 152, only proves, that exceptions in this court, not made below, come too late. Prewett’s executor vs. Prewett’s heirs, 4 Bibb, 267, amounts to no more; and the case cited from 2 Hen. and Mun. 420, is of the same character. In the foregoing authorities, it not appearing that there was any rule of court violated, (and even if there was, it may well be doubted, whether such rule could divest the court of its power, incase it chose to exercise it,) we see nothing which renders the report of the commissioners too sacred to be touched,even on final hearing;'and therefore, we are of opinion, that the exceptions of Colmesnil cannot avail him, so far as they relate to the time of filing the exceptions to the report.
The death of the witnesses, cannot change the principles of the law, and it may be remarked, that his affidavit, as to the facts he could establish by them, were they living, shews in part, at least, he has the depositions of others filed in the cause upon the same points. Moreover, he ought not to have failed taking the depositions of his witnesses while living. He' cannot *512 fasten an incorrect report upon his adversary by his negligence. We shall, therefore, proceed to inquire; whether the court did right in quashing any part of the report, and whether it was or was not proper to' have disregarded it, and ordered a referrence of the accounts to the same or a new set of commissioners, or whether the court should have proceeded to render a decree upon the exhibits and proofs filed, at the time of trial, without respect to the report, and what principles should have governed as applicable to the facts exhibited.
If new matter be introduced in a cause, after commissioners have reported, the subject should be again referred, or the court should, itself, act ápon the ■whole case thus present-fed;
It is perfectly clear, that much new matter was' brought before the court by the several amendatory bills, and the answers thereto, after thé commissioners had made their report; and this new matter, could not therefore, have been submitted to the consideration of the commissioners. We are of opinion, under such circumstances, that the investigations of the commissioners were premature, and that the court ought to have referred the accounts to the same or other commissioners, after all the new matter, and various contested claims of the parties had been exhibited; or if not, that the court itself should have sifted these claims, presented after the report; and allowed such as were supported by proof, and disregarded, the Others. It does not appear; that the court did either; On the contrary, the court made the refort of the commissioners, the basis of its decree,' after deducting largely from the sum allowed by the commissioner to Colmesnil, as stock. Thus the various claims set up by Honoré, after the report; received no attention; of were disallowed by the court in silence.-
We are of opinion, that the court was right in dis" regarding the memorandum stock book;as it is called; and that the commissioners were wrong in considering its contents as evidence against Honoré, consequently; that so much of the report as was predicated upon the authority of the memorandum stock book should have been set aside. The court modified the report on this subject, by reducing the allowance to Colmesnil, and permitting that made to Honoré, for his stock, to stand. Regarding the memorandum stock book, as no evidence, it leaves the settlement of the amount of stock, furnish" *513 feá by each partner, as the most important question involved in the cause. We believe it has not been done upon correct principles, and hence the decree is radically erroneous.
The amount ^ar^oHhe^ ^arge De-6 spatcb, at Louisville, ^commis-" sionsandstorage, not the |?"péLeof* & transp'ortation, estabto be credited to Honoré, Honoré and Colmesnil.
It is clear that the partnership was not formed, until April, 1817, after the return of Honoré fromNew-Orleans, with a valuable cargo; in the barge Despatch, Upon the formation of the partnership, this cargo was delivered to the firm. Honoré claims the proceeds of the sales of this cargo as his stock, and if it be allowedtohim, he gets its value in Louisville, as fixed by the selling prices, subject to deductions hereafter to be mentioned. Colmesnil contends that Honoré is only entitled to credit in his stock account, for the suhis paid by him for the cargo in New-Orleans, and the expenses of transportation to Louisville; and if Colmesnil succeeds, Honoré will be deprived of the increased value of the cargo in the Louisville market, It may be asked, who was the real owner of the cargo, on the arrival of the barge Despatch; in Louisville, in the spring 1817? It is certain, that Honoré was. How then shall he be deprived of the value of the cargo, at that time and place? It is insisted, on the part of Colmesnil, that it is to be done upon an agreement between the partners; that the partnership, wheii formed, should relate back to the commencement of the voyage, by the barge. Is there any proof of thist It is not contended, that there is any positive proof of it; but it is said, that the circumstances fender such an inference irresistable. Colmesnil admits in his answer, filed, 20th June, 1823, that although he and Honoré had conversed upon the subject of forming the partnership before the voyage was commenced; yet the terms were not then agreed on, and that Honoré, upon his,return, might have refused to enter into the partnership. Under such an admission, the circumstances should be very conclusive, to justify the court in depriving Honoré of the enhanced value of the cargo, in Louisville. According to Colmesnil’s admission, he would not have been under any moral, much less legal oligation, to pay Honoré any part of the loss, had the barge sunk, and the cargo been destroyed on its way up the river; As he would not have beeri *514 bound to sustain any part of such loss, if be is permit* ted to share in the enhanced value of the cargo, his claim is founded upon the supposition, that Houore intended that he should participate gratuitously.
The connexion and good feelings, which subsisted between the parties, at that time, and some other' circumstances, presented in the brief of Colmesnil’s attorney, furnishes some ground for such a presump1tion; but we think they áre not sufficiently strong, to justify us in depriving Honoré of the full value of his goods, at the time they were delivered over to the firm in Louisville, without his receiving any adequate consideration. It would protract this opinion, to a most tiresome length, were we to give all the reasons which operate,torenderthe circumstances relied on by Colmesnil's counsel, inconclusive,-and we shall not attempt it. We rest satisfied, that we are promoting the ends of justice, by giving Honoré, the value of the cargo in Louisville, at Ihe time it was delivered to the firm; to be ascertainedif practicable, by the sums for which it sold, according to the books of the firm, and if it cannot be so ascertained, then to be fixed by commissioners to be appointed for that purpose, who shall be authorized to examine the books, and hear additional testimony and evidence and report to the court.
The complainant filed a paper, purporting to be an account of the sales of the cargo,-of the barge Despatch, amounting to more than $ 16,1000, alleging that it was-correctly taken from the books óf (he firm, and called on the defendant; to answer, whether it was not correct, and, if incorrect, to point out the particular errors.
The defendant in his answer, gave a general denial of the correctness of the account of sales filed by the complainant, but declined going into particulars upon the ground, that he was advised it was unnecessary. He adds that no account Of the sales of said cargo was kept, and that it is impossible for him or any one else, to make out an account approximating the truth from any data on the books or in existence. If such be the fact, it results from a looseness in the transaction of mercantile affairs, which is believed not to be very common with skilful merchants, and it is somewhat sur *515 prising, that the allegation should come from the defendant who claims an exemption from rent, because of bis superior skill and services to the firm, he being the partner relied on to keep the accounts. The addition of the letters or words or “and Colmesnil,” to the name of J. A. Honoré was improperly made, whether under the advice of the commissioners or not, and we think it not improbable that the books of the firm under the examination of commissioners wi.ll enable them to ascertain, with tolerable correctness, the value of the cargo of the Despatch. If they should not, the commissioners must proceed, as already indica ted;
We also observe in the account filed, that there is a commission of $816 57, and storage amounting to $300, in all $1116 57, charged in favor of the firmón account of the cargo of the Despatch claimed by Honoré. Such charges, if to be found on the books, cannot be justified upon any other ground, than that Honoré was the exclusive owner individually of that cargo. As the individual owner, the charges are proper,, and should-be deducted from the proceeds of sales, and the balance left, Honoré is entitled to. as capital put into the partnership trade. But it is difficult to imagine a sufficient reason for keeping a commission and-storage account for goods owned by the firm, when it is said by the defendant that an accurate account of the sales were not kept. W e are therefore, of opinion, that the court erred in fixing the amount of Honore’s stock, at $6875 88. as reported by the commissioners from, th.e memorandum stock book.
Honore’s stock in trade must be ascertained by the value of the cargo of the barge Despatch, to be estimated according to the prices received for it on sales made-thereof by the firm, acting in the character of a commission house, deducting therefrom commissions and storage. Commissioners roust be appointed.to make the es-. tímate, and in doing so,.they are to have access lo the books land papers of, the.firm^and if these are insufficient to enable them to ascertain the value of the cargo as aforesaid, they may receive such additional proof and evidence as the parties may offer. After deducting commissions and storage, to the balance left, must be added $1400 for the barge Despatch, and any other *516 sums of money or the value of any other property^ Honoré may satisfactorily prove before the commissioners he put into the concern as capital. The of Colmesnil must be ascertained in the same manner.
Whatever sums Colmesfrom liis pfivate funds, in aid of the the cargo of the Despatch or its trans-be charged^o Honore indi■yidually.
in ascertaining the rights of partners, the implication or inference of law, to be pursued, unless countervailed, by definite and satisfactory evidence.
A and B are engaged in barging, and have a settlement; afterwards, they form a partnership as grocers, & disagree: the settlement not tobe di», turbed, unless upon clear proof of fraud or mistake. Improper to blend individual and firm accounts
*516 But as Honoré is allowed the value of the cargo of the barge Despatch at Louisville, he must not be allowed any sums paid G. Musson for that cargo, nor can he be allowed any sums expended in the voyage in bringing the cargo to Louisville. For all sums paid by Colmesnil to Musson, or to others on his drafts; or *° crew of the barge Despatch; or for provisions and o.ther articles out of his individual funds, which went to the use of Honoré in paying for and bringing carS° °f the Despatch lo Louisville, from the commencement lo the termination of the voyage, Honoré must be charged individually; and the commissioners will state and report to the court, such an account against Honoré, in favor of Colmesnil, upon the proofs and evidences furnished by the latter. For all sums of money paid by the firm, on account of the cargo of the barge Despatch to Musson or others, an account must likewise be taken, and the amount thereof must be deducted from tbs? stock of Honoré, to be ascertained as aforesaid.
The allowance to Honoré of rent for his store and warehouse is correct. The terms of the partnership are not definitely established by any evidence 5 and consequently, we must decree that, which in the absence of satisfactory evidence, the law will imply. The firm had the use of Honore’s store and warehouse. He should receive an equivalent for it. We do not find that equivalent in the superior services of Colmesnil. The unsatisfactory and defective manner in which the books have been kept, so that it is impossible according to the report of the commissioners fortified by other testimony, to make out from them a complete statement of the business of the concern, is a sufficient answer to his claim to be exhonerated from the payment of rent. The rent must be paid out of the profits of the firm.
In regard to the barging business, in which Honoré and Colmesnil were jointly concerned previous to the *517 formation of the partnership, for the purpose of doing business as grocers and commission merchants, we look upon the settlement thereof, and the execution of the note for $2252, as conclusive, and that settlement should not now be opened, unless upon the most certain evidence of fraud or mistake. The length of time which has elapsed since the termination of that concern, would render it impolitic and dangerous to open the settlement of the parties, made at a time when mutual good understanding subsisted. We, therefore, deem it proper to allow Colmesnil the sum of $1491 35, reported by the commissioners in his favor. The court erred in not decreeing a surrender of the note for $2252, to Honoré, on making the above allowance to Colmesnil.
It was improper to have blended the accounts subsisting between Honoré and Colmesnil individually, with the transactions of the firm, on the books of the firm; and we apprehend that it has been the cause of some confusion, and has rendered the accounts less intelligible.
The accounts of each partner, with the firm, should he kept in the books of the firm; but the individual accounts between the partners, should be kept as separately as individual accounts between a partner and an entire stranger to the firm. Some of the accounts of Colmesnil, which he has entered to his credit as stock, seem to us to have been properly chargeable to Honoré individually; such as those for provisions furnished the barge Despatch. In the reference again to be made to commissioners, they must state all such accounts as may be allowed by them as charges against THonore, individually.
In relation to the proceeds of 47 barrels of pork, $577 63, charged by Colmesnil, as part of his stock, it appears to us that it was bought for Honoré, and' that he designed paying for it through Fishli, but that Colmesnil, instead of applying the money received by him from Fishli, in payment for the pork, applied it in discharge of his o.wn claims against Honoré, who has never paid for or furnished funds to pay for the pork. Consequently, Cplmgsnil is entitled to the sum of *518 $577 63, audit will make no difference whether it be charged against Honoré individual!}', or whether it be deducted from bis stock and allowed to Colmesnil as stock; one must be done, and the first is most proper.
Lapse of time after a settlement, and a note given for balance due, a strong: ground for refusing to look behind the settlement
Honoré claims $640, as a payment made Musson for the cargo of the Despatch, being the proceeds of 64 barrels of flour. He will be allowed this.in the asrerv t.ainment of the amount of his stock, according to the principles already laid down, but it is very doubtful whether it ought to be allowed him. Colmesnil contends that these 64 barrels of flour were joint property; if so, half of the $640 should be passed to his credit, and charged against Hgnore. There is such a want of proof in relation to this flour, that we cannot form a satisfactory opinion concerning it; and we shall, therefore, leave it to be disposed of by the commissioners who shall again pass on the accounts.
We have already stated that the settlements of the barging business, as made by the parties, ought not to be molested. Honoré charges Colmesnil with having collected various sums of money for him, and that Colmesnil was indebted to Honoré various sums for advances, &C. for which he, Honoré, received no credit in the settlement pf the barging concern. All items charged by Honoré against Colmesnil, of date prior to the settlement, we are disposed not to allow, because of the lapse of time, and the presumption arising from the settlement and the execution of the note against such items, when now brought forward; but for all moneys collected by Colmesnil for Honoré, individually, and for all sums laid out and expended by Honoré, forColmesnil, since that settlement, and which he, Honoré, can satisfactorily prove, before the commissioners to be appointed, we are of opinion,, he should be allowed credit as a set off against the debt of $1481 35, allowed already to Colmesnil. We will not enter upon an examination of the various accounts brought forward by Honoré; some of which,, or items in some of which, probably ought to be allowed him as originating since the date of the settlement aforesaid. We shall leave them to be disposed of by'commissioners; as also, the claims set up by Horiore, upon the ground that Colmesnil has collected from the debtors of the firm, more money than he accounted for.
participation in the real . Colmesnil.-
Property ac-9uiretJ for*e¡„n to the objects P^s{. b^inferredto have been acquired by consent of each partner, from the entries upon the firm books, Unless it appear that one of the partners dissented at the time, or so soon as informed: in which case, the dissenting party, has a right to compel the party acting, to hold such acquisition as his individual property, and to charge him with the amount of purchase ihoney.
*519 We perceive no proper ground, upon which Honoré •was justified in charging Colmesnil rent, for the dwelling house of Honoré. N'or do we see any ground, upon which Honoré can be let in to share the real property acquired by Colmesnil.- Nor can we discover, by considering these' acquisitions,- any rule by which we can ascertain, whether the funds of the firm have been imoroperly applied to these objects? by Colmesnil. These subjects need not, therefore, be further investígated. We cannot discover, in all the evidence, relating to them, such a presumption against Colmesnil, as would enable us to render any decree in favor of the complainant.
The pleadings in this cause, show that there were three negroes purchased of Beamon. The decree should have divided’, or sold these negroes and divided the proceeds of sale, if it appears from the firm books that they were purchased on joint account, which we infer to be the case from the record before us.
It appears at one time, the firm owned horses, drays, &c. It does not satisfactorily appear, from any account filed or other paper, what became of the proceeds of their sale. From the foregoing view of this cause, it results that the court ought to have recommitted the accounts of the parties, for a report conformable to the principles here settled. It has not been done, it must yet be done; for in the condition of the accounts, as they now stand reported on, it is impracticable to render such decree, as will meet our ideas of law and justice. Upon the return of the case to the circuit court? that court will, therefore, make ari order referring the’ accounts to commissioners, with instructions to report thereon? as required by this opinion;- and that court will also give the commissioners power to hear and take evidence; which must be reported to the court, as well as the statement of the accounts.
In respect to the real estate, purchased for the part-hers, with the funds of the firm, as also the bank stock in the commercial bank of Louisville, these may be left to the control of the partners, each having the right to control his individual interest. We are óf opinion that the funds of the firm, used in the accumulation of this property, were appropriated by the con *520 sent of the partners; but we are not satisfied from any thing appearing on the record, whether the funds used to' acquire the turnpike stock, insurance stock, and peVr in the meeting house, were appropriated by the consent of each partner; or at the instance of one only. It would be proper to infer a joint consent from the entries on the books of the firm, unless one of the partners can show his disapprobation, at the time of acquiring the property, or as soon thereafter as he waS informed of its acquisition. In such case, as these were objects foreign to the purposes of the partnership, the objecting partner may compel him, so using the joint funds, to take thé property acquired, and account for half the money appropriated for its acquisition. We will, therefore, leave this matter open for investigation, before the commissioners; and if, upon theit report, the court shall be of opinion, that the whole should be considered joint property, it will be proper to order a sale of the pew, and a division of the money arising from the sale theteof, as the pew is not reasonably susceptable of division, without sale. A division of the different stocks, of sales, or permiting them to remain in statu quo, as may best suit the wishes of the parties, or views of the court, would not be inequitable;
If, upon the dissolution of a partnetship tifie partner is reeéfv^ Uie*0 debts due, & discharge the ^ainsHha he is trustee for partners, and must be oeived at the nominal amount as he^he-vMhat;8 he received a less value, or j^sj4jn°be* cause of the insolvency of f^ossi* bility of collectin# more, mancls were payable in a he pay off demands apí^áted ourrency, which behasreceino«iinaISvalUG? at the same value, ■ the nominal amount of the dis' n
*520 It becomes necessary to point out Other duties for.thé performance of the new commissioners, in consequence of other proceedings had in the circuit court, which do not meet our approbation. On the dissolution of the partnership, Isaac Stewart was appointed á commissioner to divide the stock of goods on hand, owned by the firm. He did so, and reported a small balance against Honoré. Colmesnil was authorized to proceed and sell the goods on hand, owned by consignors, and was required to pay two fifths of the Commission to Honoré. Stewart made a list of these goods, and their value. It does not appear that this balance against Horiore, and two fifths of these commissions in his favof, have been brought into the account; or settled in the decree, it must be now done.
Colmesnil was authorized to collect the debts, and settle the open accounts of the firm with its debtors, after the dissolution. He was required to report his proceedings to the court, and did so; Commissioners *521 were appointed in November, 1824, to examine the accounts of Colmesnil, to ascertain their correctness, and to report thereon. These, commissioners state, that it appeared to them, that Colmesnil had received many debts in currency, and on that account,they take into consideration, the rate of exchange, and present a statement to the court, from which it appears, that in several instances, they have converted the currency with which they charge him, into specie, at the rate of discount fixed, and then placed the amount of the specie, to the debit of Colmesnil. We c! eerfully grant, from the report of the gentlemen acting as commissioners, that they are excellent accountants^ but we cannot concede to them, equal skill in legal science. When Colmesnil was appointed receiver and agent of the dissolved firm, although he had an interest, he was only trustee for Honoré, so far as he was concerned, and as such trustee, he could no more accept paper currency, in discharge of a specie demand, without the consent of Honoré, so as to effect his interest, than an executor or administrator could do the like, without the consent of the heir, devisee or distributee. If an agent were tolerated, to indulge a discretion on these occasions, it might lead to great mischief. The commissioners were, therefore, wrong ín their estimates. Indeed, they acknowledge that the proportion of specie and currency, collected by Colmesnil, as agent, was fixed by a rule somewhat arbitrary, although the best which they could adopt, to accomplish their design. The account with Colmesnil, as agent, must bo settled, by charging him, in -ápecie, for the full amount of his collections, unless the debt or demand was payable in currency. If, however, he received currency, and paid specie debts with it, he should have credit for the nominal amount bC the debts so paid. If he can show that he received burrency, because he could not collect any thing else, in consequence of insolvency on the part of the debtor, that circumstance will be a good reason, why he should only be charged with the value of the currency, collected in such cases. This is conceded, not upon the ground1 that there is a discretion vested in the agent, to lake currency for a had deb.t, but upon the ground that it would be iniquitous in Honoré, to claim *522 more than his share of the sum, which would be made by reasonable diligence, out of the debtor. The accounts with Colmesnil, as agent for the firm, must be settled in conformity with the principles here laid down. The claim of llonore, for a remnant of goods deposited with Colmesnil, is left in such uncertainty, that nothing can be made out of it. There is no eveideiice to show their value, or proving that Colmesnil converted any part to his use. The charge that Colmesnil supported his family out of the firm funds or property, without entering to his debit, the money or property used, is of the same character. There is nothing in the record which will enable us to decide, whether he did so or not. We cannot decree upon surmises and possibilities.
When it appears that the book1» of a firm have been unskilfully or irregularly kept, comm’rs. appointed to adjust and settle the business of the firm, not confined to the books of the firm.
Colmesnil to be charged with the sums received as interest, and not to bo credited by interest on debts payed, after ho had on hand the funds of the firm.
In addition to the duties already prescribed for the commissioners, we direct that they report, from an examination of the books and papers of the firm, the amount of profit, realized by the concern, the accounts of each partner, with the firm, for money or goods, charging- each partner with any money or goods which he may have received, and which has not been entered on the books of the firm, to his debif. The commissioners will, in their report, likewise enlarge or diminish the profits to more or less than the sum warranted, by an inspection of the books and papers, so as to correct any mistakes in entries, or any omissions to make proper entries. This we conceive to be proper, because of the concurrence in the testimony, that the firm books have been kept in an unskilful and unsatisfactory manner. To accomplish these ends, the commissioners must be authorized to take and hear testimony, which they will also report. In like manner,'the commissioners will report all such other accounts as may be necessary to a correct adjustment, understanding and settlement of the business of the firm.
In settling the accounts of Colmesnil, as agent for the firm, it would be proper, not to allow him credit for interest, on debts paid for the firm, for time running after he had on hand sufficient funds of the firm, to pay the debt. He should be charged with all sums received for the firm as interest. If he collected any jnlerest on the money due the firm, he is as much *523 bound in conscience and law, to account for the interest as for the principal.
a party receivinji de^er^wUhout* objection, knowing its mu'st aocou.it for it, upon j^jat v¿1(je>
To the report made by the commissioners upon Col mesnil’s accounts, as agent for the firm, exceptions were filed by both parties. The court made some allowanees to Colmesnil, which were rejected by the commissioners. We do not perceive any errors in the additional allowances made by the court, unless it may be in the item for turnpike stock. That must be rejected, if it should be ascertained that the stock is not properly the property of the firm. The court did not allow all the claims set up by Colmesnil, regarding some of his vouchers as insufficient. To say the least, the rejected vouchers produce a strong impression that the firm will gain, and Colmesnil loose, individually, in consequence of these rejected claims. Therefore, on the reference to commissioners, he may strengthen his vouchers, by parol proof of their correctness, if he can produce any. Colmesnil had paid over to Honore, according to the commissioners’ report, §2000, in notes on the bank of the commonwealth, in November, 1824. The commissioners gave Colmesnil rridit for §2000. The court, at the instance of Honore, reduced the credit to §1000, by ordering Colmesnil to pay Honore §1000 in specie, in addition to the §2000 in notes, upon the ground, that the notes, at the time' of payment, were not worth more than that sum. Colmesnil objected, and excepted to this opinion of the court, and insisted that Hon-ore should be compelled to. restore the §2000 in notes, if he was required to pay §2000 in specie. In this, exception, we think Colmesnil may be right. Honore, while asking justice, should be compelled to do it; if he voluntarily received the bank notes, without fraud or mistake, knowing for what they were paid him, and made no reservation at the time, on account of the depreciation of the notes, be should account for them at their nominal value. But if, at the time they were received, he stipulated that Colmesnil should not be allowed credit for more than their real value, then the court was right. From what appears, we are inclined to the opinion, that the court erred; but as the evidence is not clear, and has not been reported by the commissioners, who made the allowance of §2000 *524 to Colmesnil, we leave the point open for new proof, under the rules prescribed, when the causéis referred to new commissioners.
Upon dissolution of p¡ut7 nership, moft pomta ¿Hsinferesfed per-' son, agent to cern" buVif1" partner appointed and fidly°h/is'h" entitled to compensation of the fund"* of the firm." He is charge-debts"]ost! bis negligence but is not forde"abIe¡f debts"b/’stíll collectable, such agent is a I "offi oe'r of”' the court, and bound to act com* pelied to proceed to col-the*bus?nessSe orbesuper-’ seded.
Colmesnil claimed compensation for his services, which was refused. Upon the dissolution of the co-partnership, it would have been most regular, to have appointed a disinterested person, as agent, to collect and settle debts, and close the affairs of the concern, Such agent would be entitled to compensation for his serv'ces) without doubt. As this was not done, but a member of the firm appointed, there would have been no impropriety in making him compensation for his services, in case they were faithfully rendered, and no particular cause exists for refusing it. The court below must, therefore, make Colmesnil an allowance ^or services, as agent for the firm, the whole to be paid by the firm, or half to be paid by Konore, if on consideration of the facts, under the above rule, they think him entitled. Honoré endeavored to make Col-m.esnil account for all debts due the firm, not collected, It is true, that if debts are lost by the negligence of Colmesnil, acting as agent for the firm, such negligence wou^ noi onlj furnish a good reason for rufusing to pay him, as agent, but ought to render him accounts-, ble to Honoré, for the loss sustained. But delay, mereíf proceeding with the collection of debts, cap-, not have the effect of rendering Colmesnil chargeable with their amount, if they be thereafter collectable. a§ent f°r extinct firm, he is subject to the control of the chancellor. He may be compelled to proceed under orders of court, or he may be superseded ^ ano^er appointment. This course we deem not regular; and if it shall finally appear, that any losses -have been sustained by his negligence, it will then be proper to make him account for them. It may here be remarked, that the court should take an account of the uncollected and unpaid debts, due to and from the firm, and by superintending the agent, have the whole closed with all practicable speed. When a partnership has been dissolved, by decree of court, as this has been, and from the disagreements among the partners, it becomes proper for the court to appoint an agent, to wind up the partnership concerns, such agent is *525 the ministerial officer of the court, for the occasion, and bound to perform the duties prescribed to him.
Depositions taken without notice, to be rejected.
A decree should be definite and certain, and should, of itself, exhibit the extent of the recovery, and the amount, and should justify excntion, without reference to .the evidence, or : to any thing extrinsic.
We have thus laid down such principles, in regard to the accounts and the most important items, as will, we trust, by being observed, enable the circuit court to settle this perplexing controversy, according to right and justice.
3d. Colmesnil has filed exceptions to the opinion of the court, overruling his objections to the reading of all depositions taken and filed by Honoré, since the first reference of the accounts. We think the court was right in overruling his objections upon every ground, except that which alleges he had no notice of the time and place of taking the depositions. We have not deemed it necessary to examine each deposition and notice, to see whether any deposition can be found, taken without notice to Colmesnil. If there be any such on the return of the cause, Colmesnil must specify it, when that court must give leave to retake it. The exception in regard to want of notice, fires at the lump of Honore’s depositions, in the hope of hiring some one. We are not disposed to consider it on account of its generality.
There are other exceptions filed on both sides, which do not deserve particular notice. There is nothing of importance in the cause, which does not fall within the operation of the plainest principles, or some rule or direction herein prescribed.
4th. The manner in which the decree has been rendered in this cause, is very objectionable and erroneous. It endeavors, by reference to a report which underwent considerable modifications, to ascertain the extent and amount of money which Colmesail should pay to Honoré. The maxim of ilId cerium est quod cerium reddipotest,” should very rarely, if ever, be applied to judgments and decrees. A judgment or decree, upon its own face, should show what the court has decided. The paper referred to, is not spread on the record, and numerous evils might grow out of tolerating the practice of deciding causes, by reference to the evidence filed, instead of giving an authoritative decree defining clearly, what was required of the par *526 ties. On the decree in this case, no execution could issue. The clerk could not tell for what sum he should issue it, without exercising judicial power, upon the ex-* amiriation of the papers referred to. The consequence in this case, has been, that the court, on motion, at a subsequent term to that during which the decree was tendered, undertook to settle the amount for v\ hich execution should issue. For these errors, if no others existed, the decree would have to be reversed. After the cause shall have been prepared as is herein directed, the court must ascertain the amount due Honoré, if any thing, and then decree for that sum against Colmesnil. If there are debts yet uncollected, it will be proper for the court to superintend their collection, requiring reports, from time to time, from the agent, and compelling him, by attachment, if necessary, to perform what the court shall require of him in respect to the collection of these debts, and the distribution and appropriation of the money when collected.
Petition for a modification.
Crittenden and Marshall, for Honoré; Denny, Nicholas and Duncan, for Colmesnil.
The decree of the circuit court is reversed, and the cause remanded for proceedings to be had in conformity to this opinion. And as the court erred in relation to both parties, the costs in this court must be divided.

The Counsel for Honoré, presented- the following petition, for a modification of the opinion of the court.

The counsel for Honoré, have carefully examined the opinion delivered by the court in this cause, and they are impressed with the belief, that it is not, in all respects, precisely correct. They beg leave respectfully, to submit such remarks and suggestions, as will recall the attention of the court to these particulars, in which they think that opinion ought to be altered or modified.
It must be very evident, that Honore’s contribution of capital, to the partnership stock, greatly exceeds that of Colmesnil. And the question becomes an interesting one, how the profits are to be divided? Are they to be distributed equally,or rateably, according to the proportions, in which the partners have contributed? *527 It would seem to result from the first principles of the doctrine of meum and tuurn, from natural equity, that profit, which is the proceeds of capital, should be distributed, in proportion to the capital of the parties. So is Mr. Watson’s opinion. See his work on Partnership, 1-42. But Mr. Gow,in his work on the same subject, and in the passage cited by the court, says, that in all cases where the division of profits is not otherwise provided for, by the positive agreement of the partners, they “must be equally divided” according to the “concurrent opinion of all the writers on the civil law.” We have, however, in the very next sentence, the opinion of Mr Gow, that it is “questionable” whether this be the doctrine of the law of England, the law which must determine this case; but Mr. Gowis mistaken; “all the writers on the civil law” do not concur in laying down its doctrines on this subject, as he does. On the contrary, all that we have had an opportunity of referring to, hold a different doctrine, and advocate a distribution of profits “in proportion to the shares advanced by each contributor.’*
^¿¡goationf
This is the doctrine of the civil law, as laid down by Brown, by Pothies,and byKent. See 1 Brown Civil law, 379; 3 Kent’s Commentaries, 7, and the referrence there given to Pothier. But it is not so much our purpose, to contest the general rule of law, laid down by the court on this subject, as to shew, that there are facts and circumstances in this cause, which render that rule inapplicable. That general rule is, that where the parties have been silent and made no agreement to the contrary, that the profits of a partnership, are to be equally divided among the partners, though their shares of contribution, may have been very different and unequal. Upon reason, and authority, the rule is very questionable. If it can be maintained, it must be on the ground, that the partners having agreed to unite, and having agreed to unequal contributions of capital, and on that basis to form a partnership, must, ex vi termini, be understood, in law, as agreeing to an equal division of profits; if they make no stipulation to the contrary. So that the inference, or rule of law, which entitles the minor contributor, to an equal share of profits, is predicated upon the assent or agreement of his partner, implied or express, to admit *528 him into the firm, and into an equal participation of profits,upon those terms. Various extrinsic circumstances, or considerations of bounty, or of interests may enter into the minds of parties, in forming such associations; may compensate for any inequality in their pecuniary contributions, and may induce one partner to admit another, to equal profits, though unable to make contribution of an equal amount of capital. And hence, the law, whose tendency and principle, is perfect equality, and reciprocity, will not depart from it in such a case, as it respects the profits of a partnership, but in conformity to some positive agreement of the parties. Every consideration, of the reasons of the rule shews, that in its utmost latitude, it Can be rationally and equitably applied to those cases only, where the unequal contributions of the parties, has been, either expressly, or impliedly agreed upon, or assented to by them. As if by agreement, A and B enter into partnership, upon terms, that A shall contribute $10,000, and B $5,000. There, nothing being said about the division of profits, an equal division shall be made, because the partners, by their silence, are presumed to have agreed to it, notwithstanding they have agreed to unequal contributions. The very reasons upon which the rule can aloue be maintained, shew its inapplicability to cases, where the parties have not agreed or assented to unequal contributions; but where, on the contrary, they have stipulated for equal contributions, and where one of the parties has violated hisagreement,by withholding a part of the capital he was to advance, and employing it for his private use or emolument. Such a defaulting partner, Cannot, upon any legal or equitable principle,be placed on tlie same footing, wills one, who, (hough be had not made an equal contribution, had.contributed all, that by the contract of partnership, he was bound to contribute. If a partner, who is bound to equal contribution, may withhold one half, and yet claim an equal Share of profit, he may withhold ninety-nine hundredth’s, and yet claim half the profit; and thus, contrary to all reason, and the maxims of the law, not only profit by his own wrong, hut profit the more, the; inore he wrongs.
Petition ¡'or a modification.
modification!1
What then, is the case of Honoré and Colmesnil? Is it the case of a partnership, where the parties have agreed upon an Unequal contribution of capitalt There is no proof, of any such unequal contract, and the court certainly cannot infer such a one. Prom the simple fact of partnership, the law can infer nothing but an agreement for equal advances of capital. Such must be understood, to be the agreement of the parties here. The court says, that “no gratuity” was intended, and the answer of Colmesnil, confirms the inference of law, that he was to contribute as much capital as Honoré. But if nothing is to be gathered from the cootradictousness of the bill and answer, the inference of law is conclusive.
Colmesnil then, was under obligation to contribute as much as Honoré contributed. .If he has not done so, it seems to us, to be unjust and unreasonable, that he should profit, and his partner loose by his breach of obligation; that the partner, who is thus wronged, should be compensated for that wfong, and that the one who is in default, should suffer all the consequences of that default, seems to be too plain for argument. But how is this to be effected? Is it by compeilingthe defaulting partner, to pay interest upon the amount of his deficit, or by resorting to, and applying that appropriate and natural rule of equity-, which divides the profits of the concern, in the same proportions, that the actual capital was contributed? We think that the latter, is the proper mode, and that the partner in default, can have no cause to complain of it. He has violated good faith and his contract, and a court of equity, will be careful, and will make sure, that he shall not gain by it, or his partner loose. There can be no hardship in the application of this rule to Mr. Colmesnil; but on the contrary, all the circumstances of the case, emphatically demand it, and mark him as a fit subject for its operation. He was the active partner in the house. He had the charge and keeping of the books of the concern. He made no entry, and kept no account of stock; his little hidden book, rejected by the court, can only be remembered as a trick and a fabrication, and shews the means by which he endeavored to beguile and deceive, and to conceal *530 the deficiency of his own contribution. He.had too, the means of making a full and equal contribution;' but he withheld them from his company, in order to employ them, as he did,in his own private lucrative speculations. A court of equity, cannot therefore, feel any great tenderness to him or his interest. Partnerships are encouraged, because they promote the public interest, in the commerce of the country. They are emphatically founded upon confidence. The maxim of law is, that in all partnership transactions, ifides exuberetfi and this is no otherwise to be observed, or enforced, than by applying the several sanctions, to every violation of it. We trust, therefore, without enlarging further on the subject, that your honors, “will perceive” sufficient grounds, upon which, not only “to resist the claim of Colmesnil, to one half the profits” of the partnership, but to give to Honoré, a share proportioned to his greater advances; and tljat the opinion of this court will be altered and modified accordingly.
Petition for a modification.
In addition to the modification, relative to the division of profit, between Honoré and Colmesnil, we conceive the deductions, directed by the court, to be made from Honore’s capital, should not be made. After the partnership was established upon the funds which were deposited at, or previous to the 12th April, 1817, any advances made by the firm, on account of either partner, should be charged to his individual account, and should constitute ilems to his debit, in an account current, as they would do, were he a stranger. The stock is a continual and permanent fund, the account current, varies each day, or may vary each hour. It is to be balanced by debits and credits, or is ultimately to be settled out of the profits of the concern, should abalance stand to the debit of either partner, upon the termination of the concern.
We .would also remark, that there is no time fixed by the court, when the assumed settlement of the concern of the barge Mary, was entered on or concluded. The 1st of June, 1816, certainly is not that time. The note for $2262 was payable on that day, but the terms of the note prove incontestably, that it had been executed prior to that date, though Colmesnil has sworn *531 it was made the day it was payable. Who ever gave a note due on the day ofits date in such terms: “ On or before the 1st day of June, 1816, &c.” This proves beyond all doubt that the day of payment was future. This note was not given upon a settlement.' Its terms preclude such an idea. It is for a specific consideration, for one half of the barge Mary.
Petition for a modification.
The check carries no evidence of a settlement. • It is dated 18th December, 18.15, and does not balance the account, for Colmesnil is still compelled to charge money lent, to force that balance. But bow can it be said, that there was a settlement at this date, when an account is charged as acontinuatipn of a date anterior November, 1815. All this pretended settlement is'in Colmesnil’s own hand writing, The court seem to intimate, that there was a settlement between Honoré and Colmesnil on the 12th April, 1817. It is respectfully suggested, that the record indicates no such fact. If there ever was a settlement, it was on the 14th November, 1815. The note for $2252, had been executed prior to that time. It should have then been surrendered; for at that date Colmesnil obtains a credit for his moiety of the barge, and he no longer had any claim upon the note. On the 10th November, he brings this into account, and first debits Honoré with the price of the barge, which conclusively shews that the contract of purchase was prior to that date. All accounts subsequently predicated upon this note, are erroneous; all charges forintereat are incorrect. If the accounts were settled on the 18th December, 1815, how could there be a balance of $283, on the 14th November antecedant, not included in that settlement. The pretended balance of $1491 36, is not correct; for how can Colmesnil pretend to charge interest up to 12th April, 1817, or to any later date, when he was debtor to. Honoré, even supposing these items of his accounts established, for the large sums he drew from Fishli, and upon which he paid no interest. Colmesnil’s accounts are so barefacedly false, that all should be rejected. He puts a false date to his debits for the money drawn from Fishli, as will be seen by comparing Fishli’s account with Colmesnil’s. This could only be done as a pretext for charging Honoré with interest. The court say, the allowance to Honoré of rent *532 for his store and warehouse, is correct. We would suggest, that the sum is too small, and hope it is not intended to conclude Honoré on that point.
Petition for a modification.
if the court consider there ever was a settlement of the business of the barge Mary, we hope the time when, will be pointed out, and that all matters subsequent to that date, will be left open for adjustment by the commissioners.
The allowance to Colmesnil of ‡577 for pork, is not thought correct, because there is no proof that the pork cost that sum; and we hope, that the court will leave it to be proved.
With respect to the application of the. funds of the firm to Colmesnil’s private speculations in real estate, the Court, it is believed, have overlooked the proof. Tarascon’s account and various others, Barbaroux, Cawthorns, &c., all shew-the application of the property and money of the firm by Colmesnil to his individual use, without chargingi;the same to his individual debit. We would -trust, this would not be excluded from investigation.
The court does not intend to preclude Honoré from proving before commissioners, any sums of money, or any profit realized by Colmesnil, by brokerage or exchange; yet as many things are mentioned particularly, and this is omitted in the catalogue of duties imposed upon the commissioners, it might be thought it was not open for investigation.
In relation to the commonwealth’s paper received by Honoré from Colmesnil,.it is thought, that the fair construction of Honore’s receipt, is that he received the paper to.be accounted for by him at its value, and not at.its nominal amount. If there have been collected any debts by Colmesnil in commonwealth’s paper, such as he was authorised so to collect from the necessity of the case, then it would be proper for this sum to be applied in part, or in whole, to the extinction of Honore’s proportion of the paper so collected. To the extent of such collection, he has a right to demand payment in kind, and equity would compel him to recover a moiety in kind. But should the sum paid Honoré in paper, exceed his proportion, then it would seem that Co\-. *533 mesnil should not be permitted to speculate upon a partner, whom he has forced out of business, and whose money he holds and deals out to him by pennies. Honoré should only be charged the value of the paper at the time of receiving. We do not think Colmesnil should receive any compensation for his services, other than resulted from the advantages he derived from having all the capital and business of the firm of Honoré and Colmesnil thrown into his hands, and the injury and injustice done Honoré, by turning him out of his own warehouse and commission business. The appointment of Colmesnil agent of liquidation, relieved him from the opprobium and disgrace, which would otherwise have attached to his character and conduct, and proclaimed to the world that the court deemed him trustworthy and honest. But he has a compensation in appropriating three-fifths of the commissions himself, instead of an equal participation. Colmesnil knew well the importance of the office conferred on him, and sought it with eagerness and with the same pretence of superiority which he assumes in his answer, and upon which he founds his claims to exemption from rent. The court will see, that the continuation of the business, the use of the capital, and the credit derived to Colmesnil from his station, was adequate reward for all his services. We would respectfully solieit the court, to make such modifications of their opinion as have been suggested, and any other which will have a tendency to advance justice, and bring this prolix and complicated dispute to a close.
Petition for a modification.
Petition for a re-hearing