### Bennett v. Rice, Jr.

(Decided June 19, 1925.)

### Appeal from Lyon Circuit Court.

1. Estoppel—Defendant Held Estopped to Claim Title to Land, where he Requested Plaintiff to Purchase it.—Where plaintiff purchased land of another at request of defendant solely because he wanted it, defendant was estopped to claim title to the land.
2. Appeal and Error—Defendants could Not Repudiate Admission in Open Court that Land was Not Susceptible of Division.—Defendants, who admitted in open court that land was not susceptible of division without materially impairing value of the interest of plaintiff, would not be permitted to repudiate admission on appeal.

T. T. HANBERRY for appellants.

UTLEY & UTLEY for appellee.

Opinion of the Court by Judge Dietzman—Affirming.

In 1862, Bryant B. Bennett died testate, the owner of two tracts of land, one of which is designated in this record as the "home place." By the sixth clause of his will, he devised the home place to his mother and wife for their lives and after their deaths to five of his seven children. His widow renounced the will and later was allotted her dower in this home tract. Among the five children to whom this home place had been devised, was a daughter, Josephine, who in December, 1863, sold her one-fifth interest in it to J. H. Bishop. On September 14, 1870, there issued from the Lyon circuit court an execution in the case of Young's Admr. v. Bishop, which execution was levied "on the undivided interest of J. H. Bishop in the lands of B. B. Bennett, deceased." In due time this interest so levied on was sold to the plaintiff in the action in which it issued, but as it brought less than two-thirds of its appraised value no deed was made to the purchaser. On March 15, 1871, another execution issued from the Lyon circuit court on another judgment in that Court against Bishop and was levied "on the redemption right of J. H. Bishop in the lands of B. B. Bennett, deceased, said interest having been sold heretofore under a former fi fa on the debt. Said lands lie on Livingstone creek near where the road from Fredonia crosses said creek, and contain about 220 acres, of which J. H. Bishop owned one undivided interest of one-fifth."

We may pause here to say that the home place originally contained 345 acres. The dower assigned to the widow of B. B. Bennett comprised 125 acres, leaving a balance of 220 acres which the five children took unincumbered by dower. Returning to the proceedings had under this last execution, we find that the redemption right was sold under it to Thomas Barr, who thereupon paid off the amount due on the first execution under which the first sale had been had. On October 2, 1877, Thomas Barr, who had never received a deed from the sheriff for the property or interest he had bought under the execution sale hereinbefore mentioned, conveyed to R. G., Stephen, Douglas and Garibaldi Bennet, three of the five children of B. B. Bennett, to whom he had devised the home place, the "one-fifth undivided interest in what is known as the B. B. Bennett home place . . . and same bought by said Barr at sheriff's sale as aforesaid." J. H. Bishop and his wife joined in this deed as

grantors, but at the end of the deed appeared this reservation:

> "But it is expressly understood that Bishop and wife convey no interest except that sold and which might be conveyed by sheriff should he make deed, that is to say, no part of their interest in the dower of Mrs. K. A. Bennett allotted her as widow of B. B. Bennett, deceased."

Later R. G. Bennett acquired from his brothers, S. D. Bennett and Garibaldi Bennett, and his sister, Sarah Black, the other devisee of the home place, their interest in the same so that R. G. Bennett, the original defendant in this action, undoubtedly and without dispute owned at the time this suit was brought all of that part of the home tract not incumbered by dower and four-fifths of that part which had been incumbered by dower. Some time prior to 1903, J. H. Bishop died leaving surviving him as his only heir at law, J. R. Bishop. Believing that under the execution sales hereinbefore mentioned no part of J. H. Bishop's interest in the dower part of the home tract had been sold, and that J. H. Bishop at the time of his death was still the owner of a one-fifth interest in the dower part of the home tract, subject, of course, to the dower right of B. B. Bennett's widow, who was then still alive, J. R. Bishop on April 6, 1903, sold this one-fifth interest in the dower part of the home tract to H. C. Rice, the plaintiff herein. The widow of B. B. Bennett having died in 1921, H. C. Rice brought this suit against R. G. Bennett and his sister, Sarah Black, who soon dropped out of this litigation, for a sale and division of this dower part of the home tract under section 490 of the Code. R. G. Bennett defended the action on the theory that under the execution sales hereinbefore mentioned all of J. H. Bishop's interest in all of the home tract, including the dower part, passed to Barr and from him to R. G. Bennett and his two brothers by the deed of October 4, 1877, and that the attempted reservation of Bishop of his interest in the dower part of the home place in that deed was a nullity. Among other defenses pleaded by the plaintiff to R. G. Bennett's theory of this case, was an estoppel based on the claim that he had been persuaded to buy this disputed interest in the dower part of the home tract from J. R. Bishop by R. G. Bennett, and that Bennett could not now claim by reason of said estoppel this disputed

interest of Bishop in that part of the land. The lower court adjudged Rice to be the owner of the interest in dispute. Bennett having died pending the litigation and the action having been revived in the name of his real heirs, they are appealing from that judgment.

We do not deem it necessary to discuss the effect of the attempted reservation in the Barr-Bishop deed of October 4, 1877, or the question whether or not the sheriff under these executions sold Bishop's interest in the dower part of the home tract, as we believe Rice fully sustained his plea of estoppel. The evidence in this case shows that Rice was engaged in farming, partly as tenant of R. G. Bennett, on five acres of a part of the home tract that was not incumbered by dower and which was divided from the rest of the home tract by a creek. These five acres abutted on a farm then owned by Rice and he was desirous of adding them to his place. R. G. Bennett told him that if he would buy from J. R. Bishop the interest J. R. Bishop owned in the dower part of the home tract, being the interest here in dispute, he, R. G. Bennett, would trade him the five acres for this interest. Bennett preferred that Rice should deal with Bishop as Rice and Bishop were friends and he believed that Rice could make a better deal than he could. The widow of B. B. Bennett was then still living and Rice had no need for this interest except to trade it for the five acres he wanted. Acting, however, at the request and wish and persuasion of Bennett, Rice bought this interest. Later when he offered to trade with Bennett, the latter backed out because he then claimed that the interest Rice had gotten was not worth the five acres. Thus he left Rice holding the bag as the owner of an undivided one-fifth interest in a piece of land then in possession of the widow as her dower and which she continued to enjoy as such for about 18 years thereafter and until her death. These facts are established by the testimony of Rice and by declarations made by Bennett on numerous occasions to disinterested third parties. Bennett himself when cross-examined on this proposition and when asked whether or not he did not get Mr. Rice to make this purchase for him answered first: "I don't recollect ever having such talk;" and later: "I might have told him if Bishop had any interest in it I might trade him that land;" and still later: "I might if he had any interest in it, I will let him have that (the five acres) for his interest;" and finally when asked if

he did not promise to give Rice the five acres for this interest replied: "Don't think I did." It is obvious that R. G. Bennett did not wish to deny what undoubtedly were the facts in the case, and by these evasive answers attempted to cast a doubt on the testimony of Rice and the disinterested witnesses mentioned. After the death of the widow, Rice took prompt steps to realize on his interest, and then Bennett attempted to repudiate the position he had taken when he asked Rice to buy this interest in for him, and tried to say that there was no interest for Rice to buy in. It hardly needs citation of authority to prove that Bennett is estopped to deny Rice's title. In the case of Wells v. Derrickson, 184 Ky. 384, 211 S. W. 773, we held that one who encourages or induces another to buy land, will be estopped from afterwards setting up any prior claim he may have. See also Chenault v. Yates, 156 Ky. 280, 160 S. W. 925. Rice purchased this land, not because he wanted it, but solely because of the request and petition of Bennett who did want it. At the time Rice bought this interest, it was of no earthly use to him on account of its dower incumbrance. No one knew when it would be of any use to him, and it turned out it was of no use to him for 18 years. Bennett cannot now, after having persuaded Rice to make this purchase, come in and say that he, Bennett, owned the land all the time. It is, therefore, apparent that the lower court correctly adjudged Rice to be the owner of this one-fifth undivided interest in the dower part of the home tract.

As grounds for reversal it is also insisted that the lower court ordered a sale of this dower tract, although its divisibility was put in issue and there was no proof on that question. The judgment under which the sale was ordered recites in its body the following:

"The land is not susceptible of division as has been admitted by both parties in open court without materially impairing the value of the interest of the plaintiff."

Counsel do not suggest any error in this statement in the judgment, and having made this admission in open court the appellants will not now be permitted to repudiate it.

There being no error in the judgment, the same is affirmed.