### Curry v. Stewart et al.

Dec. 7, 1945.

Cleon K. Calvert and W. L. Hammond for appellant.

E. B. Wilson for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

The receiver of the Engine Coal Company, an Alabama corporation, which operated a mine in Bell County, Ky., sued D. D. Stewart and J. S. Stewart, a partnership, doing business under the name of Kentucky Home Coal Company, alleging they had been its sales agents upon commission and had made secret profits which they had withheld from their principal. An accounting and judgment for a large sum of money were prayed. Judgment was rendered for the defendants.

The plaintiff alleged that the parties operated under an oral contract of agency from July 1, 1937, until December 17, 1937, by which the defendants were to receive 8% commission on sales of coal made by them for and on behalf of the Engine Coal Company; that under the regulations of the National Bituminous Coal Commission the contract was reduced to writing, which, however, had falsely shown the commission to be 10%; that in fact the defendants were to receive 6% commission on sales and 2% additional for what is known as "cash advanced" brokerage commission; that this written contract had continued in force until March 1, 1939; and during the entire period the defendants had made secret profits, especially on coal sold to the Kentucky Utilities Company.

The defendants denied that the relationship of principal and agent had existed between the parties, except for a period of 66 days following December 15, 1937, during which period they operated under the written contract because of the regulation of the Bituminous Coal Commission, which, in effect, barred such middlemen dealers and the purchase of coal for resale at wholesale. They averred that the regulation had been withdrawn on February 25, 1938, and that the written contract had been abrogated and rescinded by mutual agreement and the relationship of seller and purchaser was resumed. Under this relationship it was pleaded that the defendants had purchased the coal outright and sold it for what profit they could obtain or in some instances a loss. The defendants pleaded also that the Engine Coal Company had subsequently been voluntarily dissolved and that Charles B. Teasley and his associates had operated under a different corporate name, and also that a settlement of accounts had been made between the parties on February 21, 1939, on which date the Engine Coal Company had executed its note to the Kentucky Home Coal Company for $1,552.50 to cover a balance found to be due the defendants. This was asserted as a set-off and counterclaim.

The testimony of the witnesses introduced by the respective parties, particularly that of D. D. Stewart and Charles B. Teasley, is diametrically different on all points, save the fact of the execution of the written contract and the note described above. The many exhibits when taken altogether are susceptible of supporting either side. We confine the decision to the issue of settlement.

The defendants pleaded in detail that the note was executed and delivered to them by the Engine Coal Company through its president, Charles B. Teasley, in settlement of all claims either party had against the other, including those set up in the petition, after a thorough audit of their respective books had been made, and it had been found that the sum of $1,552.50 was owing the defendants, they having advanced large sums of money to the Engine Coal Company in payment of coal which was never delivered. The plaintiff's responsive pleading did not deny the execution of the note, but categorically denied the allegations with respect

to it having been executed as a settlement of their accounts.

Stewart testified that he and Teasley, the president and practically sole owner of the Engine Coal Company, had gone over the books of the Home Coal Company, which correctly and fully revealed the purchase and sale prices of coal handled by it and all transactions with its customers and with the Engine Coal Company; that his books were "wide open" and Teasley had gone through them and checked the figures. He had with him some records of his company. They agreed upon the balance and the note was given and accepted in full settlement. During his interrogation the plaintiff's attorney admitted of record the execution of the note and that it was a just claim against the Engine Coal Company. He did not, however, make any statement or admission as to what it had been given for. Although Teasley gave three different depositions in the case, he made no reference whatsoever to the note or claimed settlement. His silence on this point stands as an admission of the truth of Stewart's testimony. He contradicted almost every other statement. Curry, the receiver of the Engine Coal Company, who it appears was some kind of manager of its affairs, or, at least, its bookkeeper in Bell County, testified that he was not present when Teasley and Stewart had settled the differences between the two companies, but that Teasley had told him he had given the note for the balance owing Stewart's firm. Thus, Stewart's evidence as to a settlement is not only not denied but is substantially sustained by the evidence of Teasley's admission, which, however, could have been made without knowledge of secret profits unless there was complete revelation of the true accounts as testified by Stewart.

The appellant relies upon the point that "there can be no settlement of accounts between two persons when one of them is ignorant of the fact that the other has been filching moneys that belonged to him and which in equity and good conscience the person claiming the settlement ought to account for and pay over." It is everywhere accepted that as a matter of law the failure of a party to a contract of compromise and settlement to disclose every material fact of which he knows the adverse party is ignorant will afford sufficient equitable grounds for rescinding the agreement that has been

consummated by means of concealment; and that it is the duty, both moral and legal, of both parties to abstain from fraud or deceit by concealing facts which fair dealing demands should be revealed. That duty is much more comprehensive where there is a fiducial relationship. 11 Am. Jur., Compromise and Settlement, secs. 13, 29; Mills' Heirs v. Lee 6 T. B. Mon. 91, 22 Ky. 91, 17 Am. Dec. 118; Cf. O'Brien v. O'Brien, 294 Ky. 793, 172 S. W. 2d 595. But the appellant looks the other way when he comes to applying this law and fails to see the undenied testimony of Stewart that there was a full disclosure. Moreover, fraud must be pleaded and clearly proven in any case where it is relied on. There was no plea of fraud or mistake in relation to the pleaded settlement. The plaintiff merely denied the purpose for which the note was given. When it was proved to have been given as a settlement, in order for the plaintiff to avoid it, impeach it, or obtain relief from it, he must have pleaded facts which, in law, would have given him that right. It is not enough merely to enter a general denial. 11 Am. Jur., Compromise and Settlement, secs. 25, 29; 15 C. J. S., Compromise and Settlement, secs. 35, 42; 37 C. J. S. Fraud, secs. 78, 81; Honore v. Colmesnil, 24 Ky. 506, 1 J. J. Marsh. 506; Toppass v. Perkins' Adm'x, 268 Ky. 186, 104 S. W. 2d 423; Lincoln-Income Life Ins. Company v. Kraus, 279 Ky. 842, 132 S. W. 2d 318. We think the record supports the conclusion of the chancellor, at least upon the issue of settlement, and perhaps the other defenses also.

Judgment affirmed.