**NATIONAL INSURANCE UNDERWRITERS and National Aviation Underwriters, Appellants,**

v.

**LEXINGTON FLYING CLUB, INC.; Deborah Hardin Baker, Administratrix of the Estates of Barbara J. Hardin and William T. Hardin; Deborah L. Hardin, Administratrix of the Estate of Steven T. Hardin; Robert Morsink and Joseph S. Polsgrove; Deborah L. Hardin, Individually, Appellees.**

**LEXINGTON FLYING CLUB, INC.; Deborah Hardin Baker, Administratrix of the Estates of Barbara J. Hardin and William T. Hardin; Robert Morsink, Joseph S. Polsgrove, Cross–Appellants,**

v.

**NATIONAL INSURANCE UNDERWRITERS and National Aviation Underwriters, Cross–Appellees.**

Court of Appeals of Kentucky.

Nov. 9, 1979.

Rehearing Denied Feb. 8, 1980.

Discretionary Review Denied Sept. 16, 1980.

James D. Ishmael, Jr., Brown, Sledd & McCann, P.S.C., Lexington, for appellants/cross–appellees.

Ben L. Kessinger, Jr., Harbison, Kessinger, Lisle & Bush, David T. Enlow, Murphy, King, Enlow & Dunn, Lexington, for appellees/cross–appellants.

* This decision was reached prior to Judge Martin's resignation which was effective October 15, 1979.

* Before MARTIN, C. J., and REYNOLDS and WILHOIT, JJ.

MARTIN, Chief Judge.

The trial court held that National Insurance Underwriters and National Aviation Underwriters owed a defense under its policy of insurance to the action by the Estate of Steven T. Hardin versus The Lexington Flying Club. From this judgment both parties have appealed.

On December 1, 1973, William T. Hardin, Barbara J. Hardin, and Steven T. Hardin were killed in an airplane crash near Jamestown, Tennessee. At the time of the crash, William T. Hardin was piloting the plane owned by the Flying Club. Mr. Hardin was an individual member of the Flying Club and along with his wife, Barbara J. Hardin, and son, Steven T. Hardin, resided and maintained their household in Lexington, Fayette County, Kentucky.

At the time of the crash and sometime prior thereto, National Insurance Underwriters and National Aviation Underwriters had issued to the Flying Club an insurance policy and agreement to pay all sums which the insured should become legally obligated to pay.

Subsequent to the crash, an action was instituted by the estates of the deceased persons against several defendants seeking damages for the alleged wrongful deaths. The Flying Club and some individual officers and members of the Flying Club were named as defendants, allegedly as a result of their negligence and carelessness in maintaining and caring for the airplane in question.

Because of the dispute arising between the parties hereto, appellants sought a declaratory judgment pursuant to Chapter 418 of the Kentucky Revised Statutes that there was neither coverage available nor a defense due the Flying Club or its individu-

al members under the provisions of the aforementioned insurance contract.

The trial court's decision was based upon its construction of the following exclusionary language contained in the policy: "[T]his policy does not apply to . . . death of any person who is a named insured or who is a member of the named insured's household." Notwithstanding that the language of the exclusion at issue here plainly excludes from coverage ". . . death of any person who is a named insured," and Mrs. B. J. Hardin was a named insured (defined in the policy as "any member . . and the spouse of such individual if a resident of the individual member's household"), Flying Club contends that the Company owes it a defense.

The Flying Club's position is based upon the arguments that (i) the policy and exclusions drafted fail to reflect the intent of the Flying Club, (ii) that certain policy bases underlying the so-called "severability clause" apply so as to modify the exclusion, and, in a similar vein, that (iii) where the term "a named insured" is used in the exclusions, it is applied as meaning only the insured against whom the suit is brought.

■ The Flying Club's contention regarding its intention in purchasing the contract of insurance is based upon certain by-laws and minutes of a meeting of the Flying Club. However, the sections cited by the Flying Club show only that it intended to purchase *public liability* insurance and that it was concerned about the increase in premiums that seemed sure to follow the increase in coverage sought. Those records are devoid of any evidence that the Club intended to purchase *intra-member accident* insurance; indeed, had such coverage been sought, its attendant expense and novelty would have merited some mention. As there was no such mention of an intention to provide, in addition to coverage against liability claims by non-member airplane passengers, coverage for the claim contemplated by the Flying Club, we must assume that its intention was to purchase what it received.

■ Next, Flying Club argues that the policies underlying the severability clause would negate the plain language of the exclusion. The severability clause in Flying Club's policy provides that

"[T]he insurance afforded under Policy Part 1 applies separately to each insured against whom claim is made or suit is brought, but the inclusion herein of more than one insured shall not operate to increase the limits of the Company's liability."

This argument must fail in light of *Liberty Mutual Insurance Co. v. State Farm Mutual Automobile Insurance Co.*, Ky., 522 S.W.2d 184 (1975). There it was held that: "The purpose of this clause is to guarantee the same protection to all persons named as insureds and not to take exclusions out of the policy." The purpose of severability clauses is to spread protection, to the limits of coverage, among all of the named insureds. The purpose is not to negate bargained-for exclusions which are plainly worded. *See American National Bank and Trust Co. v. Hartford Accident & Indemnity Co.*, 442 F.2d 995 (6th Cir., 1971), which held that unambiguous and clearly drafted exclusions which are not unreasonable or against public policy are enforceable.

■ Flying Club's third argument which defines "the named insured" is also without merit. The authority upon which this argument is based discusses only omnibus clauses, conditions, and exclusions in general. While the logic of the argument may be persuasive in a case where the exclusion presented does not exist, the exclusion does exist in the present case. We cannot ignore the existence of the exclusion so that we may adopt a more general rule regarding the construction of insurance policies. As for the cases cited by Flying Club on this issue, they are distinguishable on the same basis.

Finally, we note that Flying Club admitted both in its answer and in its trial brief that "[E]xclusion C prohibits coverage for . . . B. J. Hardin." To this extent the matters raised on cross-appeal should not have been contested before this Court. *See*

*Bennett v. Rice*, 209 Ky. 714, 273 S.W. 479 (1925). However, because these arguments also bear on the appeal of the Company, we have considered them.

The appeal of the Company presents a more complex question. The policy exclusion which is at issue here provides that coverage is unavailable to one who is ". . . a member of the named Insured's household." The trial court noted that the article "the" made the clause susceptible to two meanings, as he stated that "[T]he question becomes whether the exclusion was intended to apply to the death of a member of the household of *any* named insured within the policy definition, or only a member of the household of a *particular* named insured." Thus, the clause was held to be ambiguous and judicial construction was indicated.

In construing the exclusion, the trial court looked to the purpose of the household exclusion which is to protect the insurer from collusive lawsuits. Because there were no ties of kinship between Steven and Flying Club, there seemed little possibility of a collusive suit between Flying Club and the Estate of Steven T. Hardin. Further, since ambiguities are to be construed strictly against the insurer, the court held that the exclusion should only apply "to a claim for the death of any person who is a member of the household of a named insured who is claiming coverage under the policy." Thus, it was held as a matter of law that the Company owed the Flying Club a defense, and a summary judgment was entered to that effect. Based upon several rules of construction and other provisions in the same policy of insurance, we disagree with this construction.

■ Admittedly the article "the" causes a problem in construing the clause of the present insurance policy. However, it should not be automatically construed against the insurer. A contract is to be construed as persons with usual and ordinary understanding would construe them. *Washington National Insurance Co. v. Burke*, Ky., 258 S.W.2d 709 (1953). While we respect the trial court's analysis and

agree that the clause at issue gives rise to a technical ambiguity, we feel that the rule in the *Burke* case precludes judicial construction of a clause which is not ambiguous to persons with usual and ordinary understanding. The usual and ordinary method of construction would be to go back through the sentence to see if "Named Insured" was used; in this case, it was used as "a [any] named insured." Further, on the page of the policy upon which the exclusion appears, "Named Insured" is defined to mean "any member . . . and the spouse of such individual member if a resident of *the individual member's household*" (emphasis added). We cannot doubt that a person of average understanding would have construed "the named insured" thusly. *Cf. Cook United, Inc. v. Waits*, Ky., 512 S.W.2d 493 (1974), and *International Union of Operating Engineers v. Jones Const. Co.*, Ky., 240 S.W.2d 49 (1951) (contract to be considered as a whole and entire instrument considered to determine the meaning of each part).

■ The holding is supported by the evidence that the Flying Club intended to provide public liability insurance for the benefit of the Club, its members, and its employees. There was, again, no evidence adduced which indicated that the Club members wanted to purchase intra–family accident insurance. Their intention, as shown in the record, was only to extend liability coverage to the various named insureds in accidents involving non–Club, non–family persons. Although this is not, strictly speaking, a "household" exclusion because Flying Club cannot have a household, it is plainly an exclusion which also seeks to avoid the possibility of collusive suits between Flying Club and its members. *Cf. Liberty Mutual, supra* at 186. An insurance contract must be construed according to its true character and purpose, and in accordance with the intentions and expectation interests of the parties. *Kentucky Water Service Co. v. Selective Ins. Co.*, Ky., 406 S.W.2d 385 (1966); *Furlow v. Sturgeon*, Ky., 436 S.W.2d 485 (1968); *Wilcox v. Wilcox*, Ky., 406 S.W.2d 152 (1966).

Although the trial court held that this holding would substitute the article "any" for the article "the" in the exclusion, to affirm the trial court would be to substitute the words "the insured who is claiming coverage under the policy." *Cf. Kelly v. State Automobile Insurance Association*, 288 F.2d 734, 737 (6th Cir., 1961). Accepting the plain meaning of the clause as an ordinary person would construe it, the evidence of intention in the record and the policy, and other language in the policy, to affirm would be changing the obligations which the parties have seen fit to make. *O. P. Link Handle Co. v. Wright*, Ky., 429 S.W.2d 842 (1968). While we are aware that ambiguities are to be strictly construed in favor of the insured, this rule only comes into play when *both* constructions of policy language are reasonable. *Louisville Gas and Electric Co. v. American Ins. Co.*, 412 F.2d 908 (6th Cir., 1969). The evidence shows that to construe the policy so as to provide for more coverage than was anticipated or bargained for by either party at the time of contracting is not reasonable. Accordingly, the summary judgment entered in favor of the Flying Club must be REVERSED.

REYNOLDS, J., concurs.

WILHOIT, J., dissents.

WILHOIT, Judge, dissenting.

I dissent from that portion of the majority opinion which holds that Exclusion C of the policy applies to a member of the household of a named insured. It is obvious to me from reading the entire policy the terms "the named insured" and "a named insured" are not used interchangeably to describe *any* named insured. For example, the policy is quite specific as to what is meant by the unqualified word "insured" whenever that term is used in Policy Part 1. The policy section defining "named insured" and "insured" also recognizes the difference between "a named insured" and "the named insured."

Although I believe Exclusion C by its plain wording does not apply to a member of the household of a named insured, the exclusion is, at best, ambiguous and should be construed against the insurance company. I, frankly, am unable to follow the logic of the majority that interpreting the policy as it is written somehow interprets the exclusion to permit recovery by "the insured who is claiming coverage under the policy."