TRANSPORT INSURANCE
COMPANY, Appellant,

v.

Tammy Myers FORD, Individually and as Administratrix of the Estate of Steven Wade Ford, Deceased; and Joe Houchens, Appellees,

and

Tammy Myers FORD, Individually and as Administratrix of the Estate of Steven Wade Ford, Deceased, Cross–Appellant,

v.

TRANSPORT INSURANCE COMPANY and Joe Houchens, Cross–Appellees,

and

Joe HOUCHENS, Cross–Appellant,

v.

TRANSPORT INSURANCE COMPANY and Tammy Myers Ford, Individually and as Administratrix of the Estate of Steven Wade Ford, Deceased, Cross–Appellees.

Nos. 93–CA–1265–MR, 93–CA–1266–MR, 93–CA–1277–MR.

Court of Appeals of Kentucky.

Aug. 26, 1994.

Motions to Dismiss Denied
as Moot Nov. 3, 1994.

Douglas W. Rennie, Janet A. Self, Montgomery, Rennie & Jonson, Cincinnati, OH, for Transport Ins.

W. Bruce Barrickman, Bovis, Kyle & Burch, Atlanta, GA, Natty Bumppo, Brownsville, for Tammy M. Ford.

Timothy L. Mauldin, Timothy L. Edelin, Bell, Orr, Ayers & Moore, Bowling Green, William R. Johnson, Robert L. Earnest, Moore & Rogers, Marietta, GA, for Joe Houchens.

Before COMBS, GUDGEL and HOWERTON, JJ.

## OPINION

HOWERTON, Judge.

All parties appeal from an order of the Barren Circuit Court granting a partial summary judgment in favor of Tammy Myers Ford, individually and as administratrix of the Estate of Steven W. Ford, deceased, and in favor of Joe Houchens. Transport Insurance Company (TICO) contends that the trial court erred by declaring that its policy of liability insurance for Manning Motor Express, Inc. (Manning) provided $1,000,000 of underinsured motorist coverage and by determining that Houchens was an insured. Ford appeals, also arguing that the trial court erred by determining that the policy provided coverage for Houchens. She further claims that she is entitled to prejudgment interest. Joe Houchens alleges that the court erred by denying him prejudgment interest. We disagree as to the amount of underinsured coverage and reverse; we decline to "prejudge" the prejudgment interest question, and we affirm the determination that Houchens was an insured.

Steven Ford was killed and Joe Houchens was injured in an accident near Atlanta, Georgia, in March 1989. They were struck by a vehicle driven by Ronald Shivers while they were standing near a truck owned by Manning which was connected to and being towed by a tow truck belonging to Kinslow Chevron Service of Glasgow, Kentucky. Steven Ford was an employee of Manning, and Houchens was an employee of Kinslow. Ford was returning from his truck after retrieving his cigarettes, and Houchens was standing beside the rig inspecting the connection which had been made for towing the Manning vehicle.

A Georgia jury awarded Ford's estate and Tammy Ford $1,290,000, and Houchens $672,000. Each recovered $25,000 from Shivers plus $5,000 no-fault benefits from the owner of Shivers' car and $30,000 as underinsured motorist benefits from Kinslow Chevron. Ford's estate also received $25,000 of underinsured motorist benefits from his personal policy, and Houchens received $5,030 of no-fault benefits from his personal policy. Various additional payments were made to each from workers' compensation claims and other minimal coverages. As of the date of the order making the judgments final and appealable, Houchens' claim was to be offset by receipts of $98,008, and Ford's claim was to be offset by total receipts of $136,004. Ford's remaining claim was $1,153,996, and Houchens' remaining claim was $573,992. Of the $1,000,000 available amount of insurance, the court awarded 65 percent to Ford and 35 percent to Houchens or $650,000 and $350,000, respectively. The court made no further ruling on any other issues including counterclaims alleging violations of the Kentucky Consumer Protection Act, the Kentucky Unfair and Deceptive Trade Practices Act, the Kentucky Unfair Claims Settlement Practices Act, or the question of prejudgment interest.

At the outset, we will address the question of prejudgment interest which is claimed by both Ford and Houchens. The question of

whether the insurance company is liable for interest on the Georgia judgment is not properly before this Court. The Barren Circuit Court has not decided the issue, and neither will we.

■ TICO and Ford argue that Houchens is not an "insured" under the terms of the insurance contract. We disagree and affirm on this issue. We adopt the opinion of Judge Riherd entered March 18, 1993, as the opinion of this Court. On this issue, he wrote:

The essential part of the contract as it relates to Mr. Houchens is the definition section of the underinsured endorsement which reads, in pertinent part, as follows:

**WHO IS AN INSURED**

1. You.
2. If you are an individual, any "family member".
3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.
4. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

The policy further defines occupying to mean that one is: in, upon, getting in, on, out or off the vehicle. It has been argued that Mr. Houchens was not "occupying" the vehicle as defined by the policy. The Kentucky Supreme Court enumerated the criteria for determining if a person is in fact occupying a vehicle in *Kentucky Farm Bureau Mutual Insurance Co. v. McKinney*, Ky., 831 S.W.2d 164 (1992).

The criteria is [sic] as follows:

(1) There must be a causal relation or connection between the injury and the use of the insured vehicle;
(2) The person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it;
(3) The person must be vehicle oriented rather than highway or sidewalk oriented at the time; and,

(4) The person must also be engaged in a transaction essential to the use of the vehicle at the time. *McKinney*, at 168.

To apply each criteria [sic] to Mr. Houchens:

(1) The causal relationship between the injury and the use of the insured vehicle was Mr. Houchens' towing of the vehicle and his need to be in and about it to perform his duties.

It has been recognized that "use" is not limited to those actually driving a motor vehicle but extended to those who had such a right of control over the vehicle as to impose a legal responsibility upon and for the use of the vehicle. *Howard v. Ponthieux*, 326 So.2d 911 (La.Ct.App. 1976). The Sixth Circuit ruled that one vehicle towing another would constitute a single unit. *State Automobile Mutual Insurance v. State Farm Mutual Automobile Insurance Co.*, 456 F.2d 238 (6th Cir.1972). The Houchens tow truck and the Manning vehicle would have been a single unit which was under the control and legal responsibility of Mr. Houchens.

(2) All agree that he was in close geographic proximity to the vehicle.
(3) Mr. Houchens was vehicle oriented.
(4) Mr. Houchens was engaged in a transaction essential to the use of the vehicle at the time.

This Court finds that Mr. Houchens was an insured as defined by the policy and as defined by the Supreme Court in *McKinney*.

The troublesome issue in this case involves a determination of the amount of underinsured motorist coverage provided by the policy. Judge Riherd found the amount to be $1,000,000. Although we agree with much of the legal theory he relied upon, and we must also agree with several of the facts he used, we nevertheless must conclude that he overlooked significant facts and law and committed reversible error. We therefore reverse on this issue.

■ Judge Riherd correctly stated that when interpreting insurance contracts, the

courts in Kentucky have used two principles for guidance: (1) the contract shall be liberally construed and all doubts resolved in favor of the insured; and (2) exceptions and exclusions should be strictly construed to make insurance effective, citing *Kentucky Farm Bureau Mut. v. McKinney, supra.* The trial court also correctly found that the original policy issued in August 1988 indicated that uninsured and underinsured motorist coverage was included and paid for as part of the total premium of $245,676. The policy generally was to provide $1,000,000 of liability coverage for 59 or 60 vehicles owned by Manning. As the only dollar amount provided for coverage was $1,000,000, Judge Riherd concluded that there was an ambiguity and ruled in favor of the insureds declaring that the amount of underinsured motorist coverage was $1,000,000. As this was a declaratory judgment action brought by TICO, all the trial court was asked to do was to declare the amount of coverage for underinsured motorist protection. Had this been an action to reform the contract, and had the action been between TICO and Manning, it is quite clear that both of those parties agreed that the coverage was for basic limits, or $60,000, as required by KRS 304.39–110(2).

■ Where we believe the trial court erred was in failing to recognize the significance of the parties' own reformation of the contract by mutual agreement on February 1, 1989. It is quite clear that the parties recognized a mutual mistake in that either no uninsured and underinsured coverage had been provided, or that no premium had been paid for such coverage, or that they had failed to specify what coverage was to be provided. The policy change entered into on February 1, 1989, approximately 60 days prior to the accident, provided merely that Manning would pay an additional $960, representing a fee of $16 per vehicle, for uninsured motorist coverage at "basic limits." It is this policy and this policy change which must be interpreted to determine what benefits Ford and Houchens are entitled to recover as "insureds" under Manning's policy. Any expectations either party might have must be based on the policy as amended. While there may continue to be some ambiguity as to the amount provided, it is clearly not

$1,000,000. We must now deal with the question of what is meant by "basic limits."

■ TICO admits that the provision and premium for uninsured motorist coverage includes underinsured motorist coverage. TICO also admits that the "basic limits" provided for this policy should be the combined figure or $60,000, which would raise the minimum of this accident from $50,000 to $60,000, since the only claims are for bodily injury. We agree that the term "basic limits" does not equate to $1,000,000 when the Kentucky statute provides that the minimum tort liability insurance must be not less than $25,000 for damages arising out of bodily injury to any one person or $50,000 for all bodily injuries sustained as a result of one accident, plus $10,000 for any property damages arising out of one accident. KRS 304.39–110(1). Section (2) also allows for a combination of the $50,000/$10,000 coverage equating $60,000 for all damages of any type arising out of any one accident.

Although it can be argued that the original policy had to include at least uninsured motorist coverage, since such was not rejected and it is required to be issued in at least the minimum amounts for every policy according to KRS 304.20–020, we cannot ignore the fact that the policy was modified or changed in February 1989. Although underinsured motorist coverage is issued by law only when requested, (KRS 304.39–320), as we have already noted, TICO automatically issues the same limits for underinsured motorist that it issues for uninsured motorist coverage, and the two are issued automatically with each policy unless rejected. Without TICO's admission, we could only conclude that the modified policy provided no underinsured coverage. We must conclude that the term "basic limits" would have the ordinary meaning and usual understanding to be the minimum limits. Words in a contract are to be given their "ordinary meaning as persons with the ordinary and usual understanding would construe them." *City of Louisville v. McDonald,* Ky.App., 819 S.W.2d 319, 320 (1991). While there may be some ambiguity as to whether "basic limits" means $50,000 or $60,000, the term does not mean $1,000,000

of coverage. On this point, there should be no ambiguity.

We note that at the same time the policy was changed, a similar uninsured/underinsured coverage was provided for the Manning vehicles operating in the State of Tennessee. We also note that the agent for TICO was a Tennessee agent, and he clearly set out in the policy change the minimum limits as provided by Tennessee statutes. They are $20,000/$40,000/$10,000. Unfortunately, he did not set out the Kentucky basic limits or the $60,000, but the intentions of the contracting parties are self-evident.

TICO also argues that the trial court erred by incorrectly and unnecessarily applying the ambiguity doctrine and by concluding that Ford and Houchens were entitled to $1,000,000 of underinsured motorist coverage. We agree, because we see no necessity to apply the ambiguity doctrine. To determine that an ambiguity exists, the court must first determine that the contract provision is susceptible to inconsistent interpretations. As we have already noted, the term "basic limits," as contained in the modified but existing policy, cannot mean $1,000,000. The only susceptible interpretation would be as to whether $50,000 or $60,000 would be available, and TICO has already admitted to the greater coverage. It would seem that these are the only two reasonable alternatives for interpretation. We agree that it was error to find that the doctrine of ambiguity was applicable in this case. *Nat'l Ins. Underwriters v. Lexington Flying Club, Inc.*, Ky. App., 603 S.W.2d 490 (1979).

The only expectation Ford or Houchens can have under the TICO and Manning insurance contract is what the contract provided after it was changed by mutual agreement in February 1989. The only terms and conditions to be applied in this case are the new terms and conditions for the insurance contract. What was bought and paid for, thought to be bought and paid for, or not paid for in 1988 was of no consequence after the parties mutually agreed to reform their instrument.

The judgment of the Barren Circuit Court is affirmed in part, reversed in part, and remanded for further consideration consistent with this opinion and to resolve any remaining issues not heretofore resolved by the partial summary judgments or the decision of this Court.

COMBS, J., concurs.

GUDGEL, J., concurs by separate Opinion.

GUDGEL, Judge, concurring by separate Opinion:

I concur in the result reached by the majority but deem it appropriate to separately state my views as to the issue regarding the limit of underinsured motorist coverage. Without a doubt, the policy issued by employer Manning's insurance agency on behalf of insurer TICO was seriously flawed, as the persons who prepared the policy's declarations sheet simply failed to complete the section of the sheet which was intended to set forth TICO's limit of liability under the policy for each of the provided types of coverage. Moreover, although the motor carrier endorsements which were attached to the policy in compliance with state and federal law specified a million-dollar coverage limit, by their very terms those endorsements apply only to claims which involved Manning's public liability to others. As those endorsements have nothing at all to do with the policy's underinsured motorist coverage of additional insureds such as appellees, they cannot by any stretch of the imagination be deemed to govern the limits of liability with respect to such claims. In fact, two of the endorsements specifically state that they do not cover claims for injuries or deaths of Manning's employees.

Because the form governing underinsured motorist coverage states that TICO's limit of liability for such coverage is "the limit of insurance for underinsured motorist coverage shown in the declarations," but the section of the declarations sheet which was to reflect the limit of underinsured motorist coverage was left blank, one might interpret the policy as indicating that Manning pur-

chased unlimited underinsured motorist coverage. However, I agree with TICO that it is simply unfair and unreasonable to construe Manning's policy as providing such unlimited coverage. Further, I do not believe that *Simon v. Continental Insurance Co.*, Ky., 724 S.W.2d 210 (1986), compels a different result.

In *Simon*, the court construed a policy which, as here, failed to specify any limit of underinsured motorist coverage. However, the policy in *Simon* was issued prior to the enactment of the 1988 version of KRS 304.39–320. The earlier statute required that the amount which the insured recovered from the underinsured tortfeasor be set off against the payment made by the insured's own insurer "to the extent of the *policy limits*" on the insured's vehicle, "less the amount paid by the liability insurer" of the underinsured party. (Emphasis added.) The insurer in *Simon* argued that absent any specification in the policy of the amount of the underinsured motorist coverage, that coverage should be deemed to be the same as that specified in the policy for uninsured motorist coverage. Due to the requisite statutory offset, however, such an interpretation would have had the effect of providing no underinsured coverage at all. The insured, by contrast, claimed that under the statute the underinsured motorist limit should be deemed to be coextensive with the policy's $100,000 liability limit. The court concluded that in light of the statute then in effect, the insured was entitled to underinsured motorist coverage in the amount of $80,000, representing the policy's $100,000 liability limit less an offset of the amount recovered from the tortfeasor's liability insurer.

Unlike the situation in *Simon*, where the language of the statute permitted the court to reasonably construe the policy as providing coverage to the extent of the policy's total liability limit, here TICO's policy was issued pursuant to the amended version of KRS 304.39–320, which now specifically provides that a policy's provision of underinsured motorist coverage obligates the insurer to pay its insured for uncompensated damages up to the amount of the policy's *under-*

*insured* motorist limits on the vehicle. Since here the portion of the policy's declarations sheet which was to reflect the underinsured motorist coverage limits was left blank, the policy could be interpreted as providing either no underinsured motorist coverage whatever, or unlimited underinsured motorist coverage. As the doctrine of reasonable expectations certainly precludes a construction of the policy which would provide the insured with no coverage at all, it is arguable that the only other possible alternative is to construe the policy as providing unlimited underinsured motorist coverage. Such an interpretation would be unfair and unreasonable, especially since it cannot be seriously argued that any insurer would intentionally issue an insurance policy providing unlimited coverage, and since the language of TICO's underinsured motorist coverage form clearly indicates that TICO believed that its declarations sheet included a limit of liability in regard to such coverage.

Because the only permissible construction of the policy itself necessarily leads to unfair and unreasonable results, I believe that the trial court should have resorted to considering extrinsic evidence and fixing an underinsured motorist coverage limit which was consistent with the parties' true intentions and expectations. Indeed, as I view it this case is further unlike *Simon* in that it is not one which involves an ambiguous insurance policy which is susceptible of two reasonable interpretations and therefore must be construed most strongly against the insurer. Nor does it involve the doctrine of reasonable expectations of the insured, except insofar as Manning is concerned, because here the appellees are insureds of the second class. *See Ohio Casualty Insurance Co. v. Stanfield*, Ky., 581 S.W.2d 555 (1979). Rather, this case involves an insurance contract which on its face is incomplete in the important respect that it fails to specify the policy's agreed limits of underinsured motorist coverage. Due to this silence, parol and other extrinsic evidence should have been adduced to establish the

agreement's missing term. *See Anderson v. Britt,* Ky., 375 S.W.2d 258 (1963). Then, based upon the evidence adduced in this vein, the court should have made a finding of fact, consistent with the evidence pertaining to the parties' intentions and expectations, regarding the amount of the underinsured motorist coverage.

For the reasons stated, I concur in the result reached by the majority.