RENDERED: MARCH 3, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1436-MR

LEIGHANN BLANTON AND                                        APPELLANTS
KATHLEEN P. WILSON


                    APPEAL FROM JEFFERSON CIRCUIT COURT
v.                  HONORABLE MITCH PERRY, JUDGE
                    ACTION NO. 15-CI-002223


JACQUES WIGGINTON                                              APPELLEE

                                    AND


NO. 2021-CA-1472-MR

JACQUES WIGGINTON                                       CROSS-APPELLANT


            CROSS-APPEAL FROM JEFFERSON CIRCUIT COURT
v.                  HONORABLE MITCH PERRY, JUDGE
                    ACTION NO. 15-CI-002223


LEIGHANN BLANTON AND                                    CROSS-APPELLEES
KATHLEEN WILSON

<u>OPINION AFFIRMING IN PART</u>
<u>AND REVERSING AND REMANDING IN PART</u>

\*\* \*\* \*\* \*\* \*\*

BEFORE:  ECKERLE, KAREM, AND McNEILL, JUDGES.

KAREM, JUDGE:  Leighann Blanton ("Blanton") and Kathleen Wilson ("Wilson") (collectively, "Appellants") appeal from a Jefferson Circuit Court judgment in their favor following a jury trial in a contract dispute between them and Jacques Wigginton ("Wigginton").  Among other things, Appellants take issue with the amount of damages they were ultimately awarded under the judgment. Additionally, Wigginton cross-appeals alleging various errors.  We affirm in part and reverse and remand in part.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 12, 2003, Appellants formed a Kentucky limited liability company named Tree House Day Care, LLC (the "LLC").  On December 27, 2005, the LLC entered into a "Contract for Deed" with H. Joseph and Betty Schutte for the real property where the daycare would operate.  The "Purchaser" under the Contract for Deed was the LLC, and Appellants signed the Contract for Deed as Members of the LLC.

Under the Contract for Deed, the LLC would begin paying $2,085.78 per month on January 1, 2006, and every month thereafter until or before January 1, 2011, at which time the remaining balance of the sales price would be due.

Upon full payment of the purchase price and any applicable interest, the Sellers would convey to the LLC a fee simple title to the property. The LLC subsequently fell on hard financial times and ultimately defaulted on the payments due under the Contract for Deed.

At some point before June of 2010, Wilson and Wigginton had an ill-fated meeting as passengers seated next to each other on a flight bound for Lexington, Kentucky from St. Petersburg, Florida. During that flight the parties naturally engaged in conversation regarding themselves. Wigginton represented himself as a graduate from the "University College of Law" who was currently a practicing paralegal. Wilson, in discussing herself, explained that she and her daughter, Appellant Blanton, owned a daycare which was in dire financial straits to which Wigginton mentioned he had always wanted to own a daycare.

Subsequently, on June 19, 2010, Appellants and Wigginton signed an "Entity Sale Agreement" (the "Agreement") which stated its purpose as "a distress entity sale of the [LLC] assets and business." In the Agreement, Appellants agreed to "assign to [Wigginton] all of their interest in [the LLC's] business and assets, subject to all of the liabilities of [the LLC]." The stated consideration was Wigginton's agreement "to assume responsibility for the prior obligations and debts of the LLC" and to pay Appellants one dollar at closing. For and in consideration of the transfer of the business and assets of the Partnership,

[Wigginton] agrees not only to assume responsibility for the prior obligations and debts of the Partnership, but to pay and deliver to [Appellants] at closing one dollar. Wigginton further agreed that upon

> receipt of [Appellants'] assets, [Wigginton] will look to assume, pay, satisfy, perform, discharge, and indemnify and hold [Appellants] harmless against any loss, cost, claim, or demand of any kind arising out of or resulting from the debts, obligations, agreements, and liabilities of [Appellants'] of every kind and description as the same exist on the closing date[.]

Additionally, the Agreement stated, "[w]ith regard to taxes, it is recognized that there may be outstanding tax balance[s] for the [LLC] for years of 2007, 2008, and 2009." Finally, the Agreement specified that Blanton would "remain with the business" as an employee "[a]t least until the requisite agreement between landowner and Buyer . . . is signed and effectuated[.]"

Of note, Wigginton maintains he entered into the contract as a Trustee. The actual agreement reads,

> This agreement is made on Saturday, June 19, 2010, by in between Kathleen P. Wilson and Leighann Blanton, individually and doing business as Tree House Daycare, LLC, a Kentucky general partnership, referred to in this Agreement "Sellers," and Jacques Wigginton, a trustee, referred to in this agreement as "Buyer."

However, Wigginton signed the document as buyer using his name with no reference to any trust. And, most notably, never produced any evidence of the existence of a trust. Only three months later, on September 21, 2010, Wigginton

-4-

sent letters to the daycare's parents informing them that the business would be closing on September 24, 2010.

On May 11, 2015, Appellants filed a complaint alleging three counts of breach of contract against Wigginton. Appellants filed the complaint individually and did not name the LLC as a plaintiff. Count One alleged breach of contract due to Wigginton's closure of the business; Count Two alleged breach of contract due to Appellants "being subjected to governmental demands for the taxes and other obligations assumed by [Wigginton], totaling over $57,000"; and Count Three alleged breach of contract for Wigginton's failure to pay Blanton for fifteen (15) weeks of work.

Procedurally, the case was filled with delays and mishaps. At one point, Wigginton was held in contempt which was ultimately held in abeyance pending mediation. Additionally, an unfortunate clerical error occurred wherein the trial judge incorrectly entered an order dismissing for failure to prosecute. This error was rectified, and the court's Kentucky Rule of Civil Procedure ("CR") 70.02 order was vacated. Ultimately, the trial court held a four-day trial beginning on November 8, 2021.

When the time for jury instructions arrived, the trial court allowed the jury to consider only those taxes for which the Appellants could show payments had been made. Because the only documentary evidence Appellants produced

supporting the amount of damages were receipts of tax payments amounting to $520, the trial court capped the amount of damages in the jury instructions at $520 for any outstanding tax obligations Wigginton may owe.  Moreover, the trial court limited any award for Wigginton's failure to pay Blanton's salary to $6,000.

The jury ultimately found the existence of a valid contract between Appellants and Wigginton; Wigginton had materially breached the contract by failing to assume all the liabilities, obligations, and debts under the contract and failing to pay Blanton's wages; Appellants did not materially breach the contract prior to Wigginton's breach; and Appellants had incurred damages from Wigginton's breach.  Accordingly, the jury awarded Appellants $520 for the outstanding tax obligations, the maximum allowed per the jury instructions, and $800 for the failure to pay Blanton's salary.  Notably, the jury, prior to returning a verdict, sent two questions to the trial judge inquiring about the alleged $57,000 tax obligation.  On November 16, 2021, the trial court entered a judgment for Appellants in conformance with the jury's verdict.  Appellants appealed, and Wigginton cross-appealed.

We will discuss further facts as they become relevant.

### a. Trial Court's Order Vacating Order of Dismissal Was Not Error or Abuse of Discretion

Because of its procedural nature and capacity for making all other issues moot, we will first address an argument from Wigginton's cross-appeal. By way of background, Appellants filed their complaint on May 11, 2015. On November 30, 2016, the trial court held a hearing on Appellants' motion to compel Wigginton to answer interrogatories and requests for admissions. In August 2017, Appellants filed a motion requesting that the trial court hold Wigginton in contempt for failure to cooperate with court-ordered mediation. The trial court entered a contempt order on September 11, 2017.

Only a few months later, on December 1, 2017, the trial court issued a *sua sponte* order under CR 77.02(2), dismissing the case without prejudice for failure to prosecute for more than one year. Neither party responded to the order until May 25, 2018, when Appellants moved the trial court to vacate its order dismissing the case for lack of action. Appellants stated that they had not received notice of the trial court's intention to dismiss the case, which is why they had not filed a timely response. Appellants also indicated their desire to move the case forward to trial.

Thereafter, the trial court entered an order vacating its previous order dismissing the case for lack of action. The trial court noted that it was doing so

pursuant to CR 60.02 and indicated that there had been activity in the case within the past year.

Wigginton asserts in his cross-appeal that all actions by the trial court after it dismissed the action without prejudice in December 2017 were outside of the trial court's jurisdiction because the trial court's order dismissing the case had become final. Thus, he argues that the trial court's judgment against Wigginton should be declared void, and this appeal should be dismissed.

As the Kentucky Supreme Court explained, "[t]he rule upon which the trial court acted, CR 60.02, is a safety valve, error correcting device for trial courts." *Kurtsinger v. Board of Trustees of Kentucky Retirement Systems*, 90 S.W.3d 454, 456 (Ky. 2002). Under CR 60.02, "[o]n motion a court may, upon such terms as are just, relieve a party or his legal representative from its final judgment, order, or proceeding . . . [for] . . . (a) mistake, inadvertence, surprise or excusable neglect; . . . or (f) any other reason of an extraordinary nature justifying relief." Indeed, "[t]he rule is designed to allow trial courts a measure of flexibility to achieve just results and thereby provides the trial court with extensive power to correct a judgment." *Kurtsinger*, 90 S.W.3d at 456 (internal quotation marks omitted). Thus, "CR 60.02 addresses itself to the broad discretion of the trial court and for that reason, decisions rendered thereon are not disturbed unless the trial judge abused his/her discretion." *Id*. "The test for abuse of discretion is whether

-8-

the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000) (citation omitted).

As to the applicability of CR 60.02 to the facts presented here, we discern no abuse of the trial court's discretion. Although Appellants' motion did not specifically cite CR 60.02, the motion requested that the trial court vacate its order dismissing the case. Moreover, Appellants filed the motion only five months after the trial court's order dismissing the case. The trial court believed a mistake had been made, as activity had occurred in the case in the past year, and in our view, CR 60.02 was adopted for such circumstances. Thus, we can discern no abuse of the trial court's considerable discretion.

### b. **Appellants' Direct Appeal**

#### 1. **Contract Interpretation and Breach of Contract**

Appellants first make numerous arguments concerning the trial court's alleged errors in interpreting the Agreement, including that the trial court should have enforced the Agreement according to its plain language because it was unambiguous. Indeed, under Kentucky law, an unambiguous written contract must be strictly enforced according to the plain meaning of its express terms and without resorting to extrinsic evidence. *Allen v. Lawyers Mut. Ins. Co. of Kentucky*, 216 S.W.3d 657, 659 (Ky. App. 2007).

Alternatively, where a contract is ambiguous or silent on a vital matter, a court may consider parol and extrinsic evidence involving the circumstances surrounding the execution of the contract, the contract's subject matter, the objects to be accomplished, and the parties' conduct. *Reynolds Metals Co. v. Barker*, 256 S.W.2d 17, 19 (Ky. 1953). By definition, "[a]n ambiguous contract is one capable of more than one different, reasonable interpretation." *Central Bank & Trust Co. v. Kincaid*, 617 S.W.2d 32, 33 (Ky. 1981). *See also Transport Ins. Co. v. Ford*, 886 S.W.2d 901, 905 (Ky. App. 1994) ("To determine that an ambiguity exists, the court must first determine that the contract provision is susceptible to inconsistent interpretations.").

Generally, the interpretation of a contract, including determining whether a contract is ambiguous, is a question of law for the courts and is subject to *de novo* review. *First Commonwealth Bank of Prestonsburg v. West*, 55 S.W.3d 829, 835-36 (Ky. App. 2000). However, once a court determines that a contract is ambiguous, areas of dispute concerning the extrinsic evidence are factual issues and construction of the contract becomes subject to resolution by the factfinder. *Cook United, Inc. v. Waits*, 512 S.W.2d 493, 495 (Ky. 1974).

Here, Appellants argue that the Agreement was wholly unambiguous. We disagree. The Agreement, in this case, was replete with ambiguities, vagueness, and confusion. For example, the LLC is incorrectly referred to as a

"Kentucky general partnership," and it is unclear whether the refences to and signatures of Appellants are as individuals or representatives of the LLC. While a seemingly small mistake, Kentucky Revised Statute ("KRS") 275.010(2) states unequivocally that "a limited liability company is a legal entity distinct from its members." As the Kentucky Supreme Court further stated, "an LLC is not a legal coat that one slips on to protect the owner from liability but then discards or ignores altogether when it is time to pursue a damage claim." *Turner v. Andrew*, 413 S.W.3d 272, 276 (Ky. 2013).

Moreover, it is unclear whether Appellants' improperly retained employee tax withholding payments could be characterized as a tax obligation or liability of the LLC that Wigginton could even lawfully assume under the Agreement. The Agreement provides no direction as to any distinctions between the liabilities of the LLC versus the liabilities of Appellants as individuals. Further, the following language regarding tax liabilities is unclear: "[w]ith regard to taxes, it is recognized that there may be outstanding tax balance [sic] for the Partnership [sic] for years of 2007, 2008, and 2009." Additional ambiguous language includes that Wigginton would "look to" assuming or paying off the "Seller's" assets. Therefore, one could not discern the parties' intentions based solely on the writings. We thus find the Agreement ambiguous and see no error in

-11-

the trial court's submission of factual issues concerning the Agreement's construction.

Moreover, we see no error in the trial court's submission to the jury on whether Wigginton breached the Agreement. "Whether under the evidence there has been a breach of the contract as interpreted by the court is a question for the jury." *Harlan Fuel Co. v. Wiggington*, 203 Ky. 546, 262 S.W. 957, 958 (1924) (citation omitted).

## 2. Equipment and Furnishings

Appellants further argue that they are entitled under the "duress, fraud, or bad faith" doctrine to recover the amounts of the business assets, such as equipment and furnishings, which were transferred under the Agreement.

Fraud must be pleaded with particularity. CR 9.02 provides, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *See Turner Elkhorn Coal Co. v. Smith*, 239 Ky. 428, 39 S.W.2d 649, 650 (1931) ("If he seeks to recover upon his original contract, he must plead the fraud, and must amend his answer and counterclaim and set out what he did and furnished thereunder and was to be paid therefor with as much particularity as if he were suing thereon originally."). *See also Curry v. Stewart*, 301 Ky. 645, 192 S.W.2d 739, 741 (1945) ("[F]raud must be pleaded and clearly proven in any case where it is relied on."). Absent these requirements, it is

impossible to establish the elements from which a cause of action for fraud might arise. *Id.*

In this case, Appellants did not specifically plead the allegation of fraud in the complaint. Likewise, Appellants do not point anywhere else in the record to where they brought the fraud issue to the trial court's attention. "[A] party may not raise an issue for the first time on appeal." *Sunrise Children's Services, Inc. v. Kentucky Unemployment Insurance Commission*, 515 S.W.3d 186, 192 (Ky. App. 2016). We thus affirm as to this issue.

### 3. **Damages**

Appellants argue that the trial court erred in its decision as to what evidence the jury could consider for an award of damages. The proper standard of review of a trial court's evidentiary rulings is abuse of discretion. *Thompson*, 11 S.W.3d at 577. Throughout the litigation of this case, Appellants argued at every turn that Wigginton was contractually responsible for $57,000 in taxes owed by Appellants. In fact, the parties' very first conversation while sitting next to each other on a plane consisted of dialogue wherein Appellants bemoaned the fact that they could not pay such a large amount of money. At trial however, the court ruled that damages would be limited to the amount which Appellants had actually paid toward the back taxes and then only those for which there was documentary evidence. The trial court did an excellent job with what would be considered

confusing testimony and presentation of evidence over a four-day trial. However, the amount to be awarded was a factual determination for the jury to make based on the evidence presented at trial and should not have been capped by the trial court. Appellants should have been allowed to present evidence of their tax obligation unrestricted by the amount they had paid. Clearly, the jury was interested in considering the evidence in relation to the alleged tax liability as illustrated by the questions sent to the judge prior to the verdict being rendered.

In an action for breach of contract, the measure of damages "is that sum which will put the injured party into the same position he would have been in had the contract been performed." *Perkins Motors, Inc. v. Autotruck Federal Credit Union*, 607 S.W.2d 429, 430 (Ky. App. 1980) (citation omitted). Indeed, "[c]ontract damages serve to compensate the injured party" and "must always be proven with reasonable certainty." *Ford Contracting, Inc. v. Kentucky Transp. Cabinet*, 429 S.W.3d 397, 407 (Ky. App. 2014). "[U]ncertain, contingent, and speculative damages" are not recoverable. *Spencer v. Woods*, 282 S.W.2d 851, 852 (Ky. 1955) (citations omitted). However, "where it is reasonably certain that damage has resulted, mere uncertainty as to the amount does not preclude one's right of recovery or prevent a jury decision awarding damages." *Curry v. Bennett*, 301 S.W.3d 502, 506 (Ky. App. 2009) (citing *Roadway Exp., Inc. v. Don Stohlman & Associates, Inc.*, 436 S.W.2d 63, 65 (Ky. 1968)). In this case, the limitations

-14-

placed on the Appellants for damages were too restrictive and the judgment of the trial court is reversed as an abuse of discretion and remanded for a new trial on damages only as they relate to the tax liability owed by Appellants.

### **Wigginton's Cross-Appeal**

As a preliminary matter, Appellants argue that Wigginton's cross-appellant's brief does not contain appropriate citations to the relevant authority or a statement as to how he preserved his arguments for appellate review. Thus, Appellants argue that his brief should be stricken, and his cross-appeal dismissed. Kentucky Rule of Appellate Procedure ("RAP") 34(4), formerly CR 76.12(4)(c)(v), requires "citations of authority pertinent to each issue of law" and "a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner."

Our options if an appellate advocate fails to abide by the rules are: "(1) to ignore the deficiency and proceed with the review; (2) to strike the brief or its offending portions . . . ; or (3) to review the issues raised in the brief for manifest injustice only[.] *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010) (citations omitted). In this case, any shortcomings in Wigginton's brief do not warrant striking his brief or reviewing the appeal solely for manifest injustice. Thus, we have elected not to impose the more severe options permitted under *Hallis* and RAP 34 and will proceed with a review of the matter.

### 1. **Wigginton as Trustee**

Wigginton argues that he signed the Agreement as a trustee. Thus, he alleges that the trial court erred in allowing Appellants to proceed against him individually and not requiring them to name the trust as a party defendant.

In *Pannell v. Shannon*, the Kentucky Supreme Court stated the general rule that "if the body of [a] contract states that the agreement is with a corporation or other entity, then the officer or agent signing the agreement has not signed in her individual capacity and cannot be held personally liable solely because of her signature." 425 S.W.3d 58, 65 (Ky. 2014).

However, in this case, the Agreement did not name a trust as the Buyer. The only Buyer was Wigginton "as trustee" of an unnamed and never-described trust. Moreover, the alleged trust acquired no interest in the LLC's business or assets under the Agreement. Thus, the rule stated in *Pannell* is not applicable because it applies to corporations or other entities who have entered into agreements with other parties, *i.e.*, where an agreement is with a corporation or other entity. Thus, we discern no error.

### 2. **Failure to Add LLC as Plaintiff**

Wigginton next argues that the trial court erred in allowing Appellants to assert their claims against Wigginton as individuals without adding the LLC as a party to the complaint. However, Wigginton failed to bring this specific argument

to the trial court. While he listed possible issues in a trial memorandum as Appellants not having the authority to sell the LLC and the LLC never having been sold under the Agreement, Wigginton never argued that the trial court erred because Appellants did not have standing to assert a valid claim.

As stated by a panel of this Court, "[i]t is well-settled that a trial court must be given the opportunity to rule in order for an issue to be considered on appeal, and the failure of a litigant to bring an alleged error to the trial court's attention is fatal to that argument on appeal." *Baker v. Weinberg*, 266 S.W.3d 827, 835 (Ky. App. 2008) (citation omitted). As such, Wigginton did not properly preserve this issue for our review.

Additionally, Wigginton does not point this Court to where in the record he preserved his argument concerning the trial court's alleged error in allowing Appellants to introduce evidence after the close of their proof. Thus, we decline to review.

## CONCLUSION

For the foregoing reasons, we affirm the Jefferson Circuit Court's judgment in part and reverse and remand in part.

ALL CONCUR.

BRIEFS FOR APPELLANT/CROSS-APPELLEE:

Michael R. Slaughter
Westport, Kentucky

BRIEFS FOR APPELLEE/CROSS APPELLANT:

Todd S. Page
Lexington, Kentucky